J. P. EAVES, Respondent, v. J. W. KEETON, Appel-- lant.

Springfield Court of Appeals, June 23, 1917.

1. **BILLS AND NOTES:** Certificate of Protest by Notary. The certificate of protest of an inland bill of exchange or note by a notary public establishes prima-facie proof of demand, refusal of payment and notice of dishonor necessary to fix the liability of the indorsers on a note. (Sections 6329, 10053, 10059, 10088, R. S. 1909.)

2. ———: ———. Formal protest by a notary, or other officer, of the dishonor of any negotiable instrument other than a foreign bill of exchange is not required under. the Negotiable Instruments Act (Sec. 10088, R. S. 1909), yet same may be protested for non-payment and when so protested the notary's certificate is admissible and constitutes prima-facie evidence.

3. ———: Proof of Demand and Notice of Dishonor. As to an inland bill or note demand of payment and notice of dishonor may be made by any one and the proof thereof may be made by oral or any competent evidence, regardless of formal protest.

4. ———: Notary's Certificate of Protest: Not Filed in Justice Court: Receivable in Circuit Court. Action on a promissory note begun in justice court. The Notary's certificate of protest was not filed in that court but was first filed in the circuit after appeal to that court. Since trial in circuit court is *de novo* such certificate may be received in evidence when filed fifteen days before trial in that court and is not excluded by sec. 6329, R. S. 1909, requiring the certificate to be filed at least fifteen days before trial.

5. ———: Notice of Dishonor: What Sufficient. The statute is complied with regarding notice of dishonor of a note (sec. 10075, R. S. 1909) when it is shown that notice was duly mailed, addressed to defendant, at his proper post office address, regardless of miscarriage in the mails.

6. ———: Indorsers: Order of Liability. Indorsers, in respect to one another are prima-facie liable in the order in which they endorse. (Sec. 10038, R. S., 1909.) But evidence is admissible to show that they have agreed otherwise among themselves.

7. ———: Indorser: When One Considered. One who places his signature on a note otherwise than as maker, drawer or acceptor, is deemed an indorser unless he clearly indicates, by appropriate words, his intention to be bound in some other capacity. (Sec. 10033, R. S. 1909.)

8. ——: Indorsement in Blank: Not to be Changed by Parol Evidence. Where one indorses a note in blank he cannot by parol evidence show that he signed merely as an agent for a prior party and was not individually liable.

9. ——: Indorser's Address: Placed on Note: Notice Sent to. Where an indorser places his post office address on the note and notice of dishonor is sent to such party at that address, this, under the statute is sufficient. (Sec. 10078, R. S. 1909.)

10. ——: Joint Indorsers: Liability. One joint indorser who receives notice of the dishonor of a negotiable instrument is not discharged because of a failure to notify another joint indorser.

11. ——: Several Indorsers: What Notice Establishes Liability. When there are successive indorsers, in order to hold any one of them liable it is not necessary to give notice to prior indorsers, notice to the last indorser being sufficient to hold him.

12. ——: Joint Indorsers: Liability. Joint payees and indorsers who indorse are deemed to indorse jointly and severally.

13. ——: Notice of Prior Dishonor: Antecedent Parties. Where a party receives notice of dishonor, he has, after the receipt of such notice, the same time for giving notice to antecedent parties that the holder has after dishonor. (Sec. 10077, R. S. 1909.)

14. ——: Liability of Indorser: Prior Indorsers. Any indorser to whom notice of dishonor is not given by the holder is discharged so far as such holder is concerned, but the party who is notified is thereby made liable to the holder and is given the right to protect himself by giving notice to those parties to the note from whom, on his paying the instrument, he is entitled to reimbursement.

15. ——: Liability of Indorser: Accommodattion Indorser. An indorser on a note cannot escape liability by showing that he received none of the proceeds and acted merely for the accommodation of one who desired to negotiate it. (Sec. 10000, R. S. 1909.) The holder parts with a consideration in the payment on the faith of the signatures thereto and that is sufficient consideration.

Appeal from Dent County Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*G. C. Dalton* and *W. P. Elmer* for appellant.

*Lorts & Breuer* for respondent.

STURGIS, J.—This suit on a promissory note involves the right of the holder to have judgment against

the appealing defendant, J. W. Keeton, as endorser. When we speak of defendant we mean J. W. Keeton, unless otherwise indicated. The record discloses that one Claud Wood is the maker of the note and Joseph E. Burgess is the payee. Such payee sold or traded the note to W. R. Keeton for a team of mules at or about the time of its date and endorsed the same in blank by writing his name on the back of such note. Shortly thereafter the defendant, J. W. Keeton, father of W. R. Keeton, having the note in his possession, offered it for sale to the plaintiff, who, after some investigation, agreed to buy it at a discount sufficient to make the interest equal eight per cent. instead of seven per cent., as specified in the note. The plaintiff testified that he agreed to buy the note on condition that both J. W. and W. R. Keeton endorse it and that thereupon J. W. Keeton first endorsed the name of W. R. Keeton under that of Burgess on the back of the note and then endorsed his own name under that of both such parties. The defendant, J. W. Keeton, says that his son, W. R. Keeton, had already endorsed the note and sent it to him to sell to plaintiff. Defendant cannot object to our accepting his statement as being correct. He, however, claims that he was acting merely as agent for his son in selling the note and endorsed it at plaintiff's request merely to show from whom plaintiff obtained the note. In any event J. W. Keeton wrote his name across the back of the note under and after the other endorsers' names were written thereon. He then delivered the note to plaintiff and plaintiff paid him the purchase price. It also clearly appears that plaintiff deducted from the price of the note a sum sufficient to make the interest equal eight per cent.

A part payment was made on the note by someone other than defendant and the balance not being paid when due, the plaintiff's evidence shows that he caused the same to be presented for payment at the bank where the note was made payable and payment was refused; that he caused notice of the dishonor to be mailed to the endorsers and had the note formally protested.

Plaintiff's proof of these facts consisted of the notary's certificate of protest which was offered and received in evidence. Our statute section 6329, Revised Statutes 1909, makes such certificate prima-facie evidence of the facts therein stated as to demand and refusal of payment and notice of dishonor to the parties to the note. [Faulkner v. Faulkner, 73 Mo. 327.] While the Negotiable Instruments Act (section 10088, Revised Statutes 1909), provides that formal protest by a notary, or other officer, of the dishonor of any negotiable instrument, other than a foreign bill of exchange, is not required, yet same may be protested for non-payment and when so protested, the notary's certificate is admissible and constitutes prima-facie evidence. Proof of demand and refusal of payment and notice of dishonor are necessary to fix the liability of endorsers. [Secs. 10053 and 10059, R. S. 1909; Nevius v. Moore, 221 Mo. 330, 353, 120 S. W. 43.] The demand of payment and notice of dishonor may be performed by anyone and the proof thereof be made by oral or any competent evidence regardless of any formal protest. The point made is that only when protest is required is the notary's certificate receivable in evidence as such proof. This, however, is not tenable. Section 6329, supra, has no such limitation but applies to all cases where notes are in fact protested. [First National Bank v. Hatch, 73 Mo. 13. 22.]

The statute last mentioned requires that such notary's certificate, in order to be receivable in evidence, must be filed in the cause fifteen days before the trial. This cause originated in a justice court and such certificate was first filed in the circuit court after the appeal to that court. It is suggested that in order to comply with the statute such certificate must have been filed in the justice court before trial there. The trial in the circuit court, however, is *de novo* and as this requirement relates merely to the competency of the evidence when offered and is merely to give the opposite party an opportunity to inquire into the truth of

the facts, no argument is necessary to refute this contention. [First National Bank v. Korn, 179 S. W. 721.]

Certain criticisms of the notary's certificate as being deficient in certain particulars are noted, but we find same to be without merit and merely refer to Pier v. Heinrichshoffen, 67 Mo. 163; Rolla Bank v. Pezolt, 95 Mo. App. 404, 411, 69 S. W. 51.

In rebuttal of the prima-facie case made by the notary's certificate, the defendant testified that no notice of the note's dishonor was received by him. It was shown, however, that soon thereafter he wrote to the notary who sent out the notice asking him to see plaintiff and get him not to sue but to indulge the parties longer for the reason that he, defendant, did not want to have to pay it; that plaintiff ought to do this for him. All that the law requires is that the notice, properly addressed, be mailed to the party entitled to receive it and any failure of the mail to deliver same makes no difference. [Sec. 10075, R. S. 1909; First National Bank v. Korn, 179 S. W. 721.] Under the instructions given, the jury were required to find and did find that notice of the note's dishonor was mailed to defendant at his proper post office address and such finding is conclusive.

The defendant insists that his and W. R. Keeton's endorsements were made at the same time and for the same purpose and therefore they must be considered joint endorsers. This ignores the positive testimony of defendant himself that his son, W. R. Keeton, had previously endorsed the note in blank and delivered it to him to negotiate and that his own endorsement was made on delivering the note to plaintiff. Moreover, we have a statute fixing the prima-facie liability of endorsers in the order in which they endorsed. [Sec. 10038, R. S. 1909.] Such was the law also before the adoption of the Negotiable Instruments Act in the absence of a contract to the contrary. [McNeilly v. Patchin, 23 Mo. 40; McCune v. Belt, 45 Mo. 174.]

The defendant's real claim, however, is not that by contract with each other he and his son, W. R.

Keeton, were to be joint endorsers, but that he was not to incur any liability whatever, being merely agent for his son. Such, however, is not his written contract, since he signed this note as an endorser without indicating his intention not to be so bound. Section 10033, Revised Statutes 1909, provides: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." This statute declares the legal effect of such blank endorsement and such effect cannot be changed or varied by parol evidence. [First Nat. Bank v. Korn, 179 S. W. 721, and cases cited; Houser v. Fayssoux (N. C.), 83 S. E. 692.]

But granting that the two Keetons are joint endorsers of this note, such fact would not aid this defendant. It is true that under an erroneous instruction, the jury found that W. R. Keeton was not liable to plaintiff because no notice of the note's dishonor was given him. This instruction is erroneous because it told the jury that the mailing of the notice of dishonor to W. R. Keeton at a post office address other than his true post office address would not be sufficient to hold him as an endorser. W. R. Keeton's endorsement on this note gave his post office address and the notice was mailed to him at such address. This, under the statute, is sufficient. [Sec. 10078, R. S. 1909.]

The law, as declared by the Negotiable Instruments Act, does not discharge one joint endorser who receives due notice of the dishonor of the negotiable instrument because of a failure to notify another joint endorser. Such was the law in this State prior to the adoption of that Act, on the theory that the contract of joint endorsers was joint and not several. [Northrup v. Chambers, 90 Mo. App. 61.] It has always been the law in this State that, when there are successive endorsers, in order to hold any endorser liable it is not necessary to give notice to a prior endorser, but notice to the last endorser only is sufficient to hold him. [Rolla Bank v. Peholz, 95 Mo. 404, 411, 69 S. W. 51; First

National Bank v. Hatch, 78 Mo. 13, 24; 9 Cyc. 1067; 4 Enc. Law (2 Ed.), 339.] Section 10038 of the Negotiable Instruments Act provides: "Joint payees or joint endorsees who endorse are deemed to endorse jointly and severally." Section 10077 provides: "Where the party receives notice of dishonor, he has, after the receipt of such notice, the same time for giving notice to antecedent parties that the holder has after the dishonor." This is a direct legislative declaration that the endorsement of joint endorsees shall be deemed a several endorsement and makes provision by which each and any endorser, when notified of the dishonor, may himself take steps to hold any other party who may properly be liable to or with him. Moreover, section 10059 of this same act provides: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." And this is followed by section 10060 as follows: "The notice may be given by or on behalf of the holder, or by or on behalf of any party to the instrument who might be compelled to pay it to the holder, and who, upon taking it up, would have a right to reimbursement from the party to whom the notice is given." According to these statutory provisions any endorser to whom notice of dishonor is not given by the holder is discharged so far as such holder is concerned, but the party who is notified is hereby made liable to the holder and is given the right to protect himself by giving notice to those parties to the note from whom, on his paying the instrument, he is entitled to reimbursement. In other words the same rule as heretofore applied to successive endorsers of notes or bills of exchange is now, by the Negotiable Instruments Act, made applicable to joint endorsers. Such is the holding in Williams v. Bank (Ky.), 137 S. W. 535, 25 Ann. Cas. 530, in construing the same sections of that act, from which opinion we quote: "Under the act the holder may give notice of dishonor

to the indorser, to whom it desires to look for the payment of the money, and it is then incumbent upon him within the time specified in the act after he received the notice from the holder to give notice to those to whom he may wish to look for reimbursement. . . . The operation of section 107 (sec. 10077, R. S. 1909), is not confined to those who are antecedent in liability as to the whole of the debt; but it applies to all who are antecedent as to any part of it. The indorsers know their relation to each other better than the holder, and the purpose of the act is to provide a uniform rule which the holder may follow in all cases as the rule was applied in the case of successive indorsers at common law." [See 8 C. J. 644.]

Something is said as to there being no consideration for the endorsement of the note by defendant and that such failure of consideration defeats his liability. Granting that said defendant had no interest in the note and received nothing for his endorsement, defendant's contention shows a misconception of what constitutes a consideration. An accommodation party to a note never has an interest in the obligation he signs and he receives no consideration for so doing. The holder, however, parts with a consideration on the faith of the signatures thereto, and that is a sufficient consideration. Section 10,000, Revised Statutes 1909, provides: "An accommodation party is one who has signed the instrument as a maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

What we have said sufficiently answers the contention that the court erred in giving and refusing instructions. The case was properly tried and the judgment is affirmed. *Cox, P. J.,* and *Farrington, J.,* concur.