THE JOHN G. PATON CO., INC., Respondent, *v.* GUARANTY TRUST COMPANY OF NEW YORK, Appellant.

First Department, January 10, 1930.

*William C. Cannon* of counsel [*Theodore Kiendl, Russel S. Coutant* and *Francis W. Phillips* with him on the brief; *Davis, Polk, Wardwell, Gardiner & Reed*, attorneys], for the appellant.

*Brison Howie* of counsel [*Cardozo & Nathan*, attorneys], for the respondent.

MARTIN, J. The respondent, a depositor in the defendant bank, recovered a judgment for the sum of $3,252.55, representing payments made from plaintiff's account on checks upon which the name of the payee was forged. The bank defended on the ground that the loss was caused by the plaintiff's negligence.

The method followed by the plaintiff in transacting business becomes important in view of the contention of the defendant that plaintiff was negligent. When a consignment of goods was received the amount thereof was entered in a book known as the "Consignment Book." The charges against the consignment advanced by the plaintiff, including freight, storage and cartage, were also entered therein. A record of the sales of the consigned goods was kept in the same book, but ordinarily remittances to consignors were not entered.

An employee of the plaintiff, one Edgar B. Hamm, formerly employed by the defendant bank, had charge of the routine matters in regard to bank accounts. He also had charge of drawing checks, making entries on the stubs, keeping the cash book, and various other matters about the office. When the defendant sent its monthly statement with vouchers, it was given to Hamm to check and see that they balanced. These monthly statements and vouchers were also examined and checked independently by the accountants employed by the plaintiff, and were found to be correct.

In the latter part of the year 1924, Hamm conceived a fraudulent scheme to obtain money. His method of operation was to prepare a statement showing an amount due a consignor, present this statement with a check drawn to the order of the consignor to either John H. Paton, the secretary of plaintiff, or John G. Paton, the president of plaintiff, for signature, repossess himself of the check and statement, destroy the statement, forge the payee's signature upon the check, writing his own indorsement thereunder, and then cash the check over the counter of the defendant. The defendant bank in each instance paid the checks without any question and without any investigation as to the indorsements of payees, although none of the payees were known to it. Having destroyed the statement which was presented with the check for signature, there was no record of any remittance to the consignor outside of the check

stub or the check book. With the statement destroyed showing the remittances, it was a simple matter for Hamm thereafter to prepare a new statement and issue a new check, which, of course, was forwarded to the consignor in due course.

The only risk that Hamm incurred was that either John H. Paton or John G. Paton, the officers of the plaintiff corporation, would remember the prior remittance. Hamm knew they were not likely to remember the prior remittance in view of the fact that the amount of purchases of the business at that time amounted to from $30,000 to $40,000 a month, and judging from the small amount of the checks in question, the total number of checks drawn making up $30,000 to $40,000 a month must have been very large.

All of the checks in question, with the exception of two, were issued in the same manner. No change was made by Hamm on the face of the check. The amount of the check as drawn was regularly entered on the stub of the check book and carried through to the cash book. At the end of the month examination of the face of the checks, together with the bank statement and the list of checks returned, would not show any discrepancy whatsoever.

The two checks that were handled differently are shown in the record as plaintiff's Exhibits 13 and 27. Plaintiff's Exhibit 13 is a check drawn to the order of A. Kreger. He was a truckman doing business with the plaintiff, and in December, 1924, he rendered a bill for trucking services of $72.60 for which Hamm drew a check. After procuring the signature of John H. Paton to a check in payment of this bill, Hamm received the check, destroyed the bill, forged Kreger's signature and cashed it with the defendant bank. He testified that this amount was included by Kreger in a later bill which covered other items, and that the later bill was paid, so that no inquiry was made by Kreger as to the non-payment of this bill and no notice, therefore, given to the plaintiff of the irregularity.

Plaintiff's Exhibit 27 is a check to the order of R. Chorosh, a stenographer of the plaintiff, for her salary. Hamm procured the check, forged the payee's signature and cashed it the same as the other checks. Apparently some days later another check was drawn to Miss Chorosh, so that she made no claim. Hamm's recollection was very vague with reference to the course pursued in this transaction. This was the last check misappropriated.

In January of 1926, Hamm, no longer able to withstand the strain caused by fear of discovery, disappeared. He was later apprehended, made a full confession, pleaded guilty to attempted forgery in the second degree, and was sentenced to a term in prison.

In view of the facts set forth the court refused to sustain the

contention of the defendant bank that the plaintiff was negligent in failing to examine the indorsements upon the checks when the checks were returned with the statements at the end of the month. The court held that the plaintiff did all that was required or that could be expected. The defendant contends that after the canceled checks were returned by the bank, the plaintiff should have gone to the files, located the signatures of customers and compared them with the indorsements on the checks. The uncontradicted testimony shows that an examination of the face of the checks and the bank statements, checking the bank balances and comparing the checks returned with the check stubs, would have revealed no discrepancies; the checks had not been changed, the amounts of the checks had been properly placed on the stubs and the amounts also properly entered in the cash book. No checks were abstracted from the list of canceled checks returned by the bank so that the plaintiff in performing its full duty could not have by an examination of the face of the checks detected the forgeries. As an additional precaution the plaintiff employed a firm of accountants who also examined these books and checks, compared the checks with the check stubs, compared the bank balances and checked the lists of returned checks. This firm of accountants was unable to detect any forgeries.

In *Shipman* v. *Bank S. N. Y.* (126 N. Y. 318) the court held that the bank must at its own peril determine the question of the genuineness of the indorsements, and that the depositor is entitled to assume that the bank has ascertained this fact, and this rule is reiterated in a number of cases.

In *Stumpp* v. *Bank of New York* (212 App. Div. 608) the court said: " Under the authorities, I believe that the depositor, upon the return of his vouchers from the bank accompanied by a statement of the transactions in his account for the preceding month, is bound to do three things: (1) Compare the vouchers returned by the bank with the check stubs in his stub book; (2) compare the balance entered in the statement (or pass book) with the balance in his stub book; (3) compare the returned vouchers with the list of checks entered in the statement (or check list). If such examination is made with ordinary care and no error is detected, then the depositor is not negligent; if he fails to make any or all of these comparisons, and such comparison would have disclosed the forgery, then he is negligent and cannot recover from the bank."

The only negligence which the defendant may take advantage of to relieve itself from liability is the omission by the plaintiff to perform some duty which it owed the bank. The plaintiff owed the bank no duty to keep a proper set of books and records or to

keep any books of record whatsoever, except a check book and check stubs. Therefore, whether the plaintiff had a proper book-keeping system and kept proper records is immaterial. Nor was the plaintiff negligent in employing Hamm and relying implicitly upon his honesty and integrity until it had some notice to the contrary.

A bank that has paid out money upon forged indorsements may relieve itself from liability only by establishing that the payment was induced by the depositor's negligence, and that in making the payment it was free from any negligence. This is an affirmative defense and the bank has the burden of proving not only the depositor's negligence but its own freedom from negligence.

The evidence conclusively established that there was no negligence on the part of the plaintiff. To require a depositor to examine each indorsement on a check when returned by the bank, would cast too great a burden on depositors. As a general rule a depositor is not familiar with such indorsements.

The authorities relied on by defendant, which held that a depositor was negligent in failing to discover a forged indorsement, were based on a peculiar state of facts which gave the depositor notice of such forgeries.

We are of the opinion that the trial court properly directed a verdict for the plaintiff, and that the judgment appealed from should be affirmed, with costs.

Dowling, P. J., and McAvoy, J., concur; Finch and O'Malley, JJ., dissent.

Finch, J. (dissenting). This action was brought by a depositor of the defendant bank to recover an amount alleged to have been paid out of its account by the bank in checks of the depositor upon forged indorsements of the payees. As a defense to the action, the defendant answered that any payment of forged checks was because of lack of care on the part of the plaintiff to discover and prevent the forgery in failing reasonably to examine the statements returned from the bank with the canceled checks. At the close of the entire case the court directed a verdict for the depositor and denied the motion of the bank to go to the jury.

The only question involved in this appeal is whether or not upon the facts there should have been a submission of the case to the jury upon the issue of negligence by the depositor.

The facts, in brief, are as follows: Plaintiff is engaged in business in the city of New York selling honey sent on consignment by farmers scattered throughout the up-State country. When the honey is sold and the price received, the plaintiff deducts its com-

mission and remits the balance to the consignors by check. In maintaining its account with the defendant, plaintiff authorized an employee to take charge of the making of deposits, the cashing of checks, the procuring of loans and the signing of checks jointly with the secretary of the plaintiff. Further, the bank was expressly authorized, by resolution of the plaintiff, to pay drafts, etc., signed by its secretary and said employee jointly, " and also to receive the same for the credit of or in payment from the payee or any other holder, when so signed, without inquiry as to the circumstances of their issue or the disposition of their proceeds, whether drawn to the individual order of, or tendered in payment of individual obligations of the officers above named, or other officers of this corporation, or otherwise." The monthly statements of account and returned vouchers were also turned over to this employee for checking and verification. It is also stipulated that the depositor had in its possession the genuine signatures of all payees of checks, and that the bank had no knowledge of such signatures.

The employee of the depositor devised and executed a plan of preparing fictitious statements, showing there was due to various customers of the plaintiff certain amounts. He then drew and signed checks for these amounts, obtained the countersignatures of the secretary of the depositor, destroyed the statements, forged the indorsement of the payees, added his own indorsement beneath, and presented the checks for payment at the bank. The checks so presented were paid by the bank and across the face of the check was stamped the word " Cashed." The employee, in this manner, cashed at least one check and more often two, on a forged indorsement, each month from September, 1924, down to and including May, 1925.

Upon the foregoing facts we are of the opinion that there were issues for the jury, both upon the question of whether there was any negligence upon the part of the plaintiff in failing to discover the forged indorsements, and upon the part of the defendant in paying the checks. In the latter event, the defendant could not set up negligence of the plaintiff as a defense to the action, for, as pointed out by Judge CULLEN, in *Critten* v. *Chemical Nat. Bank* (171 N. Y. 219, 232): " That Davis was able to successfully continue from this time to his arrest a series of forgeries is as fairly attributable to the folly of the bank in paying to a clerk a check of his employers which had plainly been altered without making inquiry as to the reason or authority for the alteration, as it was to any carelessness of the plaintiffs in failing to detect the alteration when the checks were returned to them from the bank. Since we

have held that the question in the case was not one of ratification or estoppel, but that the liability of the plaintiffs to the bank was solely for the loss caused by their negligence, it is a complete answer to the defendant's claim that its own negligence contributed to the loss. The learned counsel for the appellant contends that the plaintiffs' cause of action is not based on negligence and that the plaintiffs cannot sue on contract and recover in tort. This claim is without force. The action unquestionably was brought on contract, but it remains such. The plaintiffs sue for a debt to which the defendant answers: We have paid the money, true, not according to your directions, but in compliance with what we believed to be your directions, and your negligent conduct in your duty towards us led us into that error. To which the plaintiffs rejoin: Your own negligence contributed to the loss. All this may be true, yet the plaintiffs recover not in tort but on contract, for the allegation of negligence on the part of the defendant is used only to defeat its claim for relief on account of the plaintiffs' negligence."

The issue as to the negligence of the depositor is whether it had exercised due diligence in the checking of the returned checks. It is settled that where a depositor has in its possession the means of ascertaining whether the indorsement of a check is genuine, and there are circumstances calling for an inquiry, it becomes the duty of the depositor to verify the indorsement. As was said by Judge CHASE, in *Prudential Ins. Co.* v. *Nat. Bank of Commerce* (227 N. Y. 510, 522, 523):

" The reason given for not extending the rule to include an examination of indorsements for the purpose of determining whether they are genuine is that the depositor has no greater knowledge on the subject of the genuineness of the signature of the payee than the bank. In the case now before us the plaintiff had in its possession the genuine signatures of each of the payees in the several checks whose names were forged by Eaton. * * *.

" We think in this case that it was at least a question of fact upon the evidence before the court, a brief statement of which we have given, whether the plaintiff was negligent in failing to examine the indorsements on the checks which had been returned to it by the defendant and other banks with the genuine signatures of the payees in its possession prior to the payment of the Phipps and Wade checks and whether such negligence and the consequent failure of the plaintiff to notify the defendant of the information that it would have obtained by such examination contributed to the payment of said checks by the defendant bank.

" It is permitted to a bank to escape liability for repayment of

amount paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payment and that it has been free from any negligence. [*Morgan* v. *U. S. Mortgage & Trust Co.*, 208 N. Y. 218.] "

In the case at bar, as hereinbefore noted, the plaintiff had in its possession the genuine signatures of the payees of all these checks, whereas the defendant was without any such information. Also from the fact that the employee with regularity indorsed the checks following the supposed signatures of the payees and perhaps also from the stamp of " Cashed " across the face of the checks showing that the payees of these small checks were apparently accustomed to come to New York from comparatively long distances and obtain the money in person, there would be present some evidence of unusual occurrences which a jury might find sufficient to put the depositor upon inquiry. Under the authority above cited, it was incumbent upon the plaintiff to examine the returned vouchers and to verify the indorsements if the facts were such as to put it upon inquiry. It is no answer that the plaintiff relied upon a dishonest employee to make this inspection of the vouchers, whose interest it was to conceal from the plaintiff his knowledge of his own fraudulent acts. A party under a duty to inspect is chargeable with knowledge of any facts which an inspection would reveal, irrespective of by whom made. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219.) It, therefore, was error to direct a verdict for the plaintiff and to deny the motion to submit the issues to the jury.

It follows that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

O'MALLEY, J., concurs.

Judgment affirmed, with costs.