### BORSERINE v. MARYLAND CASUALTY CO.

### No. 11640.

Circuit Court of Appeals, Eighth Circuit.

June 17, 1940.

Rehearing Denied July 18, 1940.

Lyman Field and Clay C. Rogers, both of Kansas City, Mo. (C. Jasper Bell, of Kansas City, Mo., on the brief), for appellant.

Elliot Norquist, of Kansas City, Mo. (Paul G. Koontz and Harry F. Murphy, both of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment for the plaintiff, Maryland Casualty Company, in a suit brought to recover from L. H. Borserine, Jr., the amount which the Casualty Company, as the insurer and indemnitor of the Merchants Bank of Kansas City, Missouri, against loss from paying checks bearing forged endorsements, had paid in settlement of the liability of the bank upon eight checks received from Borserine bearing forged endorsements of the payees.

The facts are not in dispute and are in substance as follows:

B. C. Christopher & Company, the maker of the checks, was a firm engaged in the grain commission business in Kansas City, Missouri. In 1930 it had checking accounts in the First National Bank and the Fidelity National Bank & Trust Company, both of that city. Thomas Manning, as chief clerk of the Grain Department of the firm, was in charge of the grain accounts. It was his duty to see that customers of the firm who shipped grain to it were paid. When a shipment was received from a customer, Manning would requisition from the cashier of the firm a check payable to the customer for the amount due him. The check would be drawn by the firm upon one of the banks in which it had an account or would be a cashier's check purchased by the firm from one of those banks. The check would then be delivered to Manning to be remitted to the customer to whom it was payable. The firm did an extensive business and issued many checks. During the year 1930, among the checks requisitioned by Manning and delivered to him by his employer were the eight checks in suit, which aggregated $4,574.02. All of them were payable to customers of the firm. Three were drawn on the First National Bank, two upon the Fidelity National Bank & Trust Company, and three were cashier's checks of the First National Bank. The firm was not, at the time the checks were issued, indebted to the persons to whom the checks were payable and Manning did not procure the checks for the benefit of such persons but with the intention of forging their endorsements and cashing the checks in furtherance of a scheme which he had devised and was carrying on for the purpose of obtaining money for himself. He made false entries in the books to cover his defalcations. He forged the endorsements of the payees of the checks and cashed each of them at the B. & B. Pharmacy, a drug store owned and operated by L. H. Borserine, Jr. Manning was a frequenter of this drug store and was well known to Borserine, who had, at Manning's request, cashed many of the customers' checks drawn by the firm. Borserine had an account with the Merchants Bank of Kansas City, Missouri. He endorsed each of the checks "B. & B. Pharmacy, L. H. Borserine, Jr.", and received either cash or credit for them from that bank, which in turn endorsed them and put them through the Kansas City Clearing House, and thus received credit for them from the banks upon which they were drawn. The drawee banks then charged the checks (except cashier's checks) to the account of Christopher & Company, stamped the checks "paid" and returned them to the firm. In January, 1931, the firm first discovered that Manning had forged the endorsements of the payees of the checks and had appropriated the proceeds. It then demanded of the drawee banks the amount of the checks. These banks demanded that the Merchants Bank restore to them the funds represented by the checks, as required by a rule of the Clearing House. Suits were commenced by Christopher & Company against the banks on which the checks were drawn, and they demanded that the Merchants Bank defend the suits and indemnify them against loss. The Merchants Bank was insured by the Maryland Casualty Company against loss from paying checks bearing forged endorsements. After notifying Borserine of the alleged forgeries of the payee endorsements by Manning, the Merchants Bank demanded that the Casualty Company take over the defense of the suits brought by Christopher & Company against the drawee banks and protect the Merchants Bank from loss. The Casualty Company complied. In order to secure a discharge of the liability of the drawee banks and the Merchants Bank and a dismissal of the suits, the Casualty Company, in January, 1935, paid to Christopher & Company $3,651 in full settlement. On February 10, 1939, it brought this suit against Borserine, upon his endorsements of the checks, to recover the amount which it had paid Christopher & Company, claiming that it (the Casualty Company) had by equitable subrogation become the owner of the checks and had succeeded to all of the rights of the Merchants Bank against Borserine as an endorser of the checks, to the extent of the Casualty Company's payment to Christopher & Company.

In his answer Borserine asserted: (1) That the Casualty Company had stated no cause of action upon which relief could be granted. (2) That its cause of action was barred by limitations and by laches. (3) That the Casualty Company had discharged a liability that it was under no legal obligation to pay, (a) because Christopher & Company, after its discovery of the forgeries of Manning, elected to de-

mand restitution of him and his surety, and his surety paid the loss, and thereby the maker of the checks ratified Manning's acts in endorsing the checks; (b) because the maker in issuing the checks did not take precautions which would have disclosed that the checks were payable to persons to whom no money was owing, and held Manning out as its agent with authority to negotiate checks issued by it; and (c) because it was negligent in not inspecting the cancelled checks returned to it and thereby discovering the forgeries. On motion of the plaintiff, so much of the defense as was based upon the charge that Christopher & Company had elected an inconsistent remedy by demanding payment from Manning and his surety was eliminated, over the objection of the defendant. The remaining issues were tried to the court.

The court found the facts to be substantially as we have stated them. It found that Christopher & Company knew nothing of the forgeries until January, 1931; that audits were made by public accountants for the firm for the years 1929 and 1930, but the forgeries were not discovered and were not easily ascertainable from an examination of the books. The court concluded that it had jurisdiction; that the Merchants Bank and the drawee banks were not required to verify the endorsements of the payees of the checks and were entitled to rely upon Borserine's endorsements; that Borserine, being the initial acceptor of the checks, was obligated to verify the endorsements of the payees, and that by his endorsements he guaranteed the genuineness of the payee endorsements; that the plaintiff's right of action accrued January 17, 1935, the day it paid Christopher & Company, and was not barred by limitations; that Christopher & Company was not guilty of such negligence in the issuance of the checks or the discovery of the forged endorsements as would bar its right of recovery from the drawee banks, and that the payment made by the Casualty Company was in discharge of a valid obligation.

The contentions of Borserine are:

(1) That the court was without jurisdiction because of § 41(1), Title 28 U.S.C., 28 U.S.C.A. § 41(1), which denies to federal courts jurisdiction of any suit "to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer * * * unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made."

(2) That plaintiff was not entitled to equitable subrogation, since it discharged its own primary obligation, since its equities were not superior to those of Borserine, and since it made only part payment.

(3) That the checks and all endorsers were discharged by payment of the checks.

(4) That no recovery could be had against Borserine for money had and received, (a) because he was not negligent, and (b) because such a cause of action was barred by limitations.

(5) That the drawee banks, the Merchants Bank, and the plaintiff were under no legal obligation to reimburse Christopher & Company, (a) because, when it demanded payment from the forger's surety it thereby released all others from liability, and (b) because it was guilty of negligence.

■ Before considering the legal aspects of the case, it may be helpful to summarize the practical aspects of it. Christopher & Company issued these checks in the ordinary course of its business upon the representation of Manning, a trusted employee, that the payees were entitled to the checks. Borserine, at his own risk, cashed these checks for Manning in reliance upon Manning's honesty and in the belief that the payees had endorsed the checks. When Borserine endorsed the checks he guaranteed that the payee endorsements were genuine and in effect undertook to pay the checks himself if they were not genuine. The Merchants Bank, in accepting the checks from Borserine and giving him cash or credit, did so in reliance upon his endorsements. The drawee banks paid the checks in reliance upon the guaranty of the Merchants Bank that the payee endorsements upon the checks were genuine and upon its implied undertaking to refund the proceeds if they were not. The Casualty Company was a stranger to all parties connected with the checks except the Merchants Bank. It owed them no duty and was under obligation to none of them. Its undertaking under its bond to the Merchants Bank was to protect and indemnify that bank against losses from paying such checks as those in suit.

■ Since the right of the plaintiff to maintain this suit is not based upon an as-

signment of these checks, but upon equitable subrogation, § 41(1), Title 28 U.S.C., 28 U.S.C.A. § 41(1), does not apply.[1]

The contention of Borserine that the Casualty Company has no equitable right of subrogation is based upon three grounds: (1) that it paid its own primary obligation to the insured; (2) that the equities are equal; and (3) that it seeks subrogation on part payment.

■ An insurer, upon paying a loss, is subrogated to the insured's right of action against any other person responsible for the loss. The right of the insurer against such other person arises out of the nature of the contract of insurance as a contract of indemnity, is derived from the insured, and at common law was to be enforced in his name. Subrogation is a normal incident of indemnity insurance.[2]

■ The Casualty Company does not seek subrogation upon partial payment. The fact that it settled with Christopher & Company for less than the face value of the checks is immaterial. It discharged its liability and that of the Merchants Bank to the drawee banks in full, and that constituted full payment.[3] The rule against subrogation on partial payment of a debt is for the benefit of the creditor, and when his debt is satisfied the rule may not be invoked. Standard Surety & Cas. Co. v. Standard Acc. Ins. Co., 8 Cir., 104 F.2d 492, 497.

■ We think that whatever rights and remedies the Merchants Bank had against Borserine under his endorsements of these checks the Casualty Company was entitled to enforce by right of subrogation, to the extent of what it had paid.

■ It is the rule in Missouri and elsewhere that one who obtains possession of a check upon an unauthorized or a forged endorsement of the payee's signature and collects the amount of the check from the drawee is liable for the proceeds to the owner of the check, notwithstanding the fact that they were paid to the person from whom the check was obtained.[4]

---

[1] New Orleans v. Gaines's Administrator (City of New Orleans v. Whitney), 138 U.S. 595, 605, 11 S.Ct. 428, 34 L.Ed. 1102; Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34, 37; Claiborne Parish School Board v. Fidelity & Deposit Co. of Maryland, 5 Cir., 40 F.2d 577, 578; American Surety Co. of New York v. Lewis State Bank, 5 Cir., 58 F.2d 559, 560; Fidelity & Deposit Co. of Maryland v. Farmers' Bank, 8 Cir., 44 F. 2d 11, 15; Staples v. Central Surety & Insurance Corp., 10 Cir., 62 F.2d 650, 652; United States F. & G. Co. v. City of Asheville, 4 Cir., 85 F.2d 966, 971, 972.

[2] St. Louis, Iron Mountain & Southern Ry. Co. v. Commercial Union Ins. Co., 139 U.S. 223, 235, 11 S.Ct. 554, 35 L.Ed. 154; Ætna Casualty & Surety Co. v. Phœnix National Bank & Trust Co., 285 U.S. 209, 214, 52 S.Ct. 329, 76 L.Ed. 709; Standard Marine Ins. Co., Ltd., v. Scottish Metropolitan Assurance Co., Ltd., 283 U.S. 284, 287, 51 S.Ct. 371, 75 L.Ed. 1037; United States v. American Tobacco Co., 166 U.S. 468, 474, 17 S.Ct. 619, 41 L.Ed. 1081; Hall & Long v. Nashville & C. R. Co., 13 Wall. 367, 20 L.Ed. 594; Ætna Life Ins. Co. v. Moses, 287 U.S. 530, 541, 542, 53 S.Ct. 231, 77 L.Ed. 477, 88 A.L.R. 647. "An insurer required by contract to indemnify the insured for any loss suffered is entitled to be subrogated to any legal right belonging to the insured at the time of loss by virtue of which he might have compelled another to make compensation in whole or in part for such loss." Vance on Insurance, 2d Ed., page 668. The right of an insurer to subrogation is recognized in Missouri. Foster v. Missouri Pac. Ry. Co., 143 Mo. App. 547, 128 S.W. 36; Iowa State Ins. Co. v. Missouri Southern R. Co., 223 Mo.App. 148, 9 S.W.2d 255; National Fire Ins. Co. v. Maddox, 224 Mo.App. 90, 20 S.W.2d 705; United States F. & G. Co. v. Goodson, 227 Mo.App. 456, 54 S.W.2d 754; Subscribers v. Kansas City Public Service Co., 230 Mo.App. 468, 91 S.W.2d 227, 231. Compare Loewenstein v. Queen Ins. Co., 227 Mo. 100, 127 S. W. 72; Plate Glass Underwriters' Mut. Ins. Co. v. Ridgewood Realty Co., 219 Mo.App. 186, 269 S.W. 659; McKenzie v. Missouri Stables, Inc., 225 Mo.App. 64, 34 S.W.2d 136; Royal Indemnity Co. v. Poplar Bluff Trust Co., 223 Mo.App. 908, 20 S.W.2d 971.

[3] Southern Surety Co. v. Braley, 8 Cir., 64 F.2d 893, 896; United States v. National Surety Co., 254 U.S. 73, 76, 41 S. Ct. 29, 65 L.Ed. 143; Piedmont Coal Co. v. Hustead, 3 Cir., 294 F. 247, 252, 32 A.L.R. 556; Glades County v. Detroit Fidelity & Surety Co., 5 Cir., 57 F.2d 449, 451, 452.

[4] Kansas City Casualty Co. v. Westport Ave. Bank, 191 Mo.App. 287, 177 S.W. 1092; Strong v. Commonwealth Trust Co., Mo.App., 199 S.W. 1034; Strong v. Missouri-Lincoln Trust Co., Mo.App., 263 S.W. 1038; Good Roads

■ It is also the rule in Missouri and elsewhere that a bank may not charge to the account of a depositor a check upon which the endorsement of the payee has been forged, and that if it does so the depositor may compel restitution,[5] unless the bank has been misled by some negligence or other fault of the depositor, which will estop him from questioning the validity of the charge made against his account.[6]

■ By the law of Missouri, a forged endorsement of a payee's name is declared to be wholly inoperative (§ 2652, R.S.Mo.1929, Mo.St.Ann. § 2652, p. 655), and a subsequent bona fide holder for value without notice of the forgery would acquire no title to the instrument, no right to enforce payment, and no right to the proceeds.[7] Payment of money by the drawee bank to the holder of such a check is not payment of the check and "in law the check remains unpaid." First Nat. Bank v. Whitman, 94 U.S. 343, 347, 24 L. Ed. 229; Leather Manufacturers' Bank v. Merchants' Bank, 128 U.S. 26, 34, 9 S.Ct. 3, 32 L.Ed. 342; Union Biscuit Co. v. Springfield Grocer Co., 143 Mo.App. 300, 126 S.W. 996.

■ Under the Negotiable Instruments Law of Missouri, an endorser of a check without qualification warrants to all subsequent holders that the instrument is genuine and in all respects what it purports to be, that he has good title to it, that all prior parties had capacity to contract, and that the instrument is at the time of his endorsement valid and subsisting, and he engages that on due presentment it will be paid, and that if it is not paid he will pay the amount thereof to the holder or to any subsequent endorser who may be compelled to pay it. § 2694, R.S.Mo.1929, Mo. St.Ann. § 2694, p. 688.

Each endorser of the checks in suit became liable to subsequent endorsers under his or its warranties and engagements.[8]

■ There can be no doubt then that the Merchants Bank, under its warranty, was obligated to the drawee banks, and that Borserine, under his endorsement, was obligated to it.

But Borserine contends that Christopher & Company had, by its negligence and its election to proceed against Manning's surety, released the drawee banks from liability. We shall assume, without deciding, that Borserine might assert as a defense that the drawee banks were not liable, because of the negligence of Christopher & Company.

Machinery Co. v. Broadway Bank, Mo. App., 267 S.W. 40; Leather Manufacturers' Bank v. Merchants' Bank, 128 U.S. 26, 34, 9 S.Ct. 3, 32 L.Ed. 342; California Stucco Co. of Washington v. Marine Nat. Bank, 148 Wash. 341, 268 P. 891, 67 A.L.R. 1531 and cases referred to in note; Merchants' Bank v. National Capital Press, 53 App.D.C. 59, 288 F. 265, 31 A.L.R. 1066 and cases referred to in note; Railroad Building Loan & Savings Ass'n v. Bankers' Mortgage Co., 142 Kan. 564, 51 P.2d 61, 102 A.L.R. 140 and cases in note.

[5] Merchants' Bank v. Prudential Ins. Co., 110 Mo.App. 62, 84 S.W. 101; Union Biscuit Co. v. Springfield Grocer Co., 143 Mo.App. 300, 126 S.W. 996, 998; State v. Globe Indemnity Co., 222 Mo.App. 918, 9 S.W.2d 663, 669; American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034; Scott v. First Nat. Bank, 343 Mo. 77, 119 S.W.2d 929, 936–938; First National Bank v. Whitman, 94 U.S. 343, 347, 24 L.Ed. 229; Leather Manufacturers' Bank v. Merchants' Bank, 128 U.S. 26, 34, 35, 9 S. Ct. 3, 32 L.Ed. 342; United States v. Guaranty Trust Co., 293 U.S. 340, 345, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651.

[6] American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034; Scott v. First Nat. Bank, 343 Mo. 77, 119 S.W.2d 929, 936–938; 7 Am. Jur. page 426, § 589, and cases cited.

[7] United States v. Guaranty Trust Co., 293 U.S. 340, 345, 55 S.Ct. 221, 79 L. Ed. 415, 95 A.L.R. 651; American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034, 1040; First National Bank v. Produce Exchange Bank. 338 Mo. 91, 89 S.W.2d 33, 37; Equitable Life Assur. Soc. v. National Bank of Commerce, Mo.App., 181 S.W. 1176, 1182; Little v. Remley, Mo.App., 101 S.W.2d 505, 507; Globe Indemnity Co. v. First Nat. Bank, Mo.App., 133 S. W.2d 1066, 1071, 1072; Merchants' Bank v. Prudential Ins. Co., 110 Mo.App. 62, 84 S.W. 101; Home Ins. Co. v. Mercantile Trust Co., 219 Mo.App. 645, 284 S.W. 834, 836.

[8] Hunt v. Sanders, 288 Mo. 337, 232 S.W. 456, 458; Eaves v. Keeton, 196 Mo. App. 424, 193 S.W. 629, 631; In re Ziegenhein, Mo.App., 187 S.W. 893, 895; Home Ins. Co. v. Mercantile Trust Co., 219 Mo.App. 645, 284 S.W. 834, 836; First Nat. Bank v. Produce Exchange Bank, 338 Mo. 91, 89 S.W.2d 33, 37, 38.

The trial court determined that Christopher & Company was not guilty of any negligence which would relieve the drawee banks of their liability. That finding, unless clearly erroneous, is binding on this court. Rule 52 (a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. We think it is not erroneous.[9]

There is, we think, no basis for believing that, even if the drawee banks could have successfully defended against the claim of Christopher & Company upon the ground that it elected to pursue an inconsistent remedy by demanding reimbursement from the surety of Manning, such defense was available to the Merchants Bank or its insurer. The rule in Missouri is apparently to the contrary.[10]

While the court below eliminated the defense based upon election of remedies, it invited Borserine, upon the trial, to prove, if he could, that Christopher & Company had been paid the amount of these checks by Manning's surety. No evidence that Manning or his surety had paid anything on account of the checks in suit was introduced. The doctrine of election of remedies was exhaustively discussed by Judge Booth in Henderson Tire & Rubber Co. v. Gregory, 8 Cir., 16 F.2d 589, 593, 594, 49 A.L.R. 1503. He pointed out that, "The pursuit of a supposed, but nonexistent, remedy does not constitute an election." The Missouri cases upon which Borserine relies [11] indicate that where one has two inconsistent remedies and pursues one to a successful conclusion, he may not avail himself of the other and thus procure double satisfaction for the same loss. They are not authority for the contention that the unsuccessful demand made by Christopher & Company upon the surety of Manning discharged the drawee banks, the Merchants Bank, or Borserine from liability. We think that the court below did not err in eliminating so much of

Borserine's defense as was based upon the assertion that the mere demand of Christopher & Company upon Manning and his surety released the drawee banks, nor in holding that the Casualty Company paid a loss that it was legally obligated to pay.

There remains for consideration the question of limitations and laches.

"An action upon any writing * * * for the payment of money or property" must be commenced in Missouri within ten years. § 861, R.S.Mo.1929, Mo.St.Ann. § 861, p. 1139. "All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 861", must be commenced within five years. § 862, R.S.Mo.1929, Mo.St.Ann. § 862, p. 1143. There is persuasive authority that in Missouri a suit upon an endorsement of a check is an action upon a writing for the payment of money. Home Ins. Co. v. Mercantile Trust Co., 219 Mo. App. 645, 284 S.W. 834. The Casualty Company, as has already been pointed out, seeks to enforce the rights and remedies of its insured against Borserine under his endorsements. The endorsements were writings. The terms of the contracts of endorsement are defined by the laws of Missouri. Borserine's engagements, evidenced by his endorsements, were to pay money if the payee endorsements were not genuine. The suit by the Casualty Company was commenced within ten years. If the Merchants Bank could have maintained a suit against Borserine upon his endorsements, we think the Casualty Company could maintain such a suit. It had succeeded to the rights of its insured.

While the federal courts sitting in equity are not bound by state statutes of limitation in dealing with alleged stale claims, they are ordinarily guided by them and will apply them unless there are unusual or extraordinary circumstances which require the application of

---

[9] See and compare American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034, 1038–1040; Shipman v. Bank of State, 126 N.Y. 318, 27 N.E. 371, 12 L.R.A. 791, 796, 22 Am. St.Rep. 821; John G. Paton Co. v. Guaranty Trust Co. of New York, 227 App. Div. 545, 238 N.Y.S. 362, 365, 366; Defiance Lumber Co. v. Bank of California, 180 Wash. 533, 41 P.2d 135, 99 A. L.R. 426 and cases cited in note.

[10] First National Bank v. Produce Exchange Bank, 338 Mo. 91, 89 S.W.2d 33, 38; Strong v. Missouri-Lincoln Trust Co., Mo.App., 263 S.W. 1038, 1045. Compare Shipman v. Bank of State, 126 N.Y. 318, 27 N.E. 371, 12 L.R.A. 791, 22 Am.St. Rep. 821.

[11] United States F. & G. Co. v. Fidelity Nat. Bank & Trust Co., 232 Mo.App. 412, 109 S.W.2d 47; No Dust O Co. v. Home Trust Co., Mo.App., 46 S.W.2d 203.

a different rule in furtherance of justice.[12] Mere delay does not constitute laches.[13]

Our conclusion is that the judgment appealed from was right. It is affirmed.

[12] Johnson v. Umsted, 8 Cir., 64 F.2d 316, 323, 324; Benedict v. City of New York, 250 U.S. 321, 327, 39 S.Ct. 476, 63 L.Ed. 1005; Percy v. Cockrill, 8 Cir., 53 F. 872, 876; Kelley v. Boettcher, 8 Cir., 85 F. 55, 62; Cooper v. Hill, 8 Cir., 94 F. 582, 589, 590; Johnson v. White, 8 Cir., 39 F.2d 793, 798; Early v. City of Helena, 8 Cir., 87 F.2d 831, 832; Fretwell v. Gillette Safety Razor Co., 4 Cir., 106 F.2d 728, 730.

[13] Des Moines Terminal Co. v. Des Moines Union R Co., 8 Cir., 52 F.2d 616, 630; Johnson v. Umsted, 8 Cir., 64 F.2d 316, 323; Townsend v. Vanderwerker, 160 U.S. 171, 186, 16 S.Ct. 258, 40 L.Ed. 383; Leonard v. Gage, 4 Cir., 94 F.2d 19, 25; Missouri Public Service Corp. v. Fairbanks, Morse & Co., 8 Cir., 95 F.2d 1, 4.