821 F.2d 1556
 1987 A.M.C. 2561
 DONALD D. FORSHT ASSOCIATES, INC., Plaintiff,
v.
TRANSAMERICA ICS, INC., and Transamerica Transportation
Services, Inc., Defendants/Third-Party Plaintiffs-Appellants,
v.
FIRST GREYHOUND LEASING COMPANY and Greyhound Leasing and
Financial Corporation, Third-Party Defendants-Appellees.
DONALD D. FORSHT ASSOCIATES, INC., Plaintiff-Appellant,
v.
TRANSAMERICA ICS, INC., and Transamerica Transportation
Services, Inc., Defendants/Third-Party Plaintiffs-Appellees,
First Greyhound Leasing Co., et al., Third-Party
Defendants-Appellees.
DONALD D. FORSHT ASSOCIATES, INC., Plaintiff-Appellee,
v.
TRANSAMERICA ICS, INC., and Transamerica Transportation
Services, Inc., Defendants-Third Party Plaintiffs-Appellants,
v.
FIRST GREYHOUND LEASING CO., and Greyhound Leasing &
Financial Corp., Third- Party Defendants-Appellees.
 Nos. 85-5974, 86-5341 and 86-5376.
 United States Court of Appeals,
Eleventh Circuit.
 July 21, 1987.
Rehearing and Rehearing En Banc Denied Sept. 10, 1987.
 
 Kieron F. Quinn, Quinn, Ward, & Kershaw, P.A., Baltimore, Md., for Transamerica ICS, Inc., and Transamerica Transp., Services, Inc.
 Richard F. Ralph, Miami, Fla., for 1st Greyhound Leasing & Greyhound L & F Corp.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HILL and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 These consolidated appeals challenge the judgment of the United States District Court for the Southern District of Florida in which the court held that the appellees, First Greyhound Leasing Company and Greyhound Leasing & Financial Corporation ("Greyhound"), were not liable to either of the appellants for their proportionate share of certain administrative expenses incurred in an earlier proceeding. For the reasons hereinafter stated, we reverse the district court's judgment as to the potential liability of Greyhound to the appellants, Transamerica ICS, Inc. and Transamerica Transportation Services, Inc. ("Transamerica"), and we find the remaining issues on appeal moot.
 
 
 2
 This case is related to four prior admiralty in rem proceedings filed in the Southern District of Florida. The present controversy arose when the funds realized at a court-ordered interlocutory sale of two of the vessels arrested in the prior in rem proceedings were insufficient to cover court-ordered administrative expenses.
 
 
 3
 On June 21, 1983, a constellation of corporations affiliated with Chester, Blackburn & Roder, Inc. ("CB & R") filed for reorganization under Chapter Eleven[1] in the United States Bankruptcy Court for the Southern District of New York. The CB & R group was engaged in a number of enterprises in the Miami area, principally related to the ocean carriage of cargo, including terminal operations, stevedoring and agency and freight forwarding.
 
 
 4
 The chief business of the CB & R group was the carriage of goods by sea from Florida and the United States Gulf coast to Central America. To that end, it owned or operated a number of vessels. As a consequence of CB & R's collapse, four of these vessels, the M/V PANCARIBE, the M/V PANATLANTIC, the M/V COSTA RICA and the M/V CENTRO AMERICA were arrested in Miami.
 
 
 5
 In each of those admiralty cases, the first complaint to be filed with the clerk's office of the United States District Court for the Southern District of Florida was that of the appellant, Transamerica. In each case Transamerica deposited the required $7,500.00 with the Marshal as an advance for administrative expenses.
 
 
 6
 In addition to Transamerica, a number of CB & R's other maritime service creditors joined the in rem actions. Some filed separate in rem actions and deposited advances against administrative fees with the Marshal, but most simply intervened in the first in rem case brought by Transamerica and did not deposit any monies with the Marshal.
 
 
 7
 The four in rem cases were subsequently consolidated into two actions, the division being principally the result of the vessels having two different mortgagees. The M/V CENTRO AMERICA and the M/V COSTA RICA were mortgaged to the Financing and Credit Export Institute of the Norwegian Commercial Banks, Ltd., and the actions involving those two vessels were consolidated into Civil Action Number 83-1605-Civ-EBD. The M/V PANATLANTIC and the M/V PANCARIBE, which were mortgaged to the appellee, Greyhound, were consolidated into Civil Action Number 83-1464-Civ-EBD.
 
 
 8
 Shortly after consolidation, counsel for Transamerica sought to have the vessels held at a lower cost than that charged by the Marshal for the use of his personnel and the resources of his office. The arrangements made by the Marshal were costing $250.00 per day, per vessel. When contacted, the appellant, Donald D. Forsht Associates, Inc. ("Forsht"), quoted a price of $220.00 per ship, per day. There was no opposition to a substitution of the custodian and, therefore, Transamerica filed motions in each of the four in rem cases to have Forsht appointed the Marshal's substitute custodian for each vessel. The motions were granted and the orders signed and entered by the district court on June 30, 1983.
 
 
 9
 The case involving the two larger vessels, the M/V CENTRO AMERICA and the M/V COSTA RICA, proceeded expeditiously. Pursuant to a motion for interlocutory sale, the M/V CENTRO AMERICA and the M/V COSTA RICA were sold by the court on November 18, 1983, for a total sum of $8,000,000.00, which was the minimum price previously set by the district court.
 
 
 10
 The consolidated case involving the smaller vessels, the M/V PANATLANTIC and the M/V PANCARIBE, did not move as quickly. Although Greyhound moved to sell the M/V PANATLANTIC and M/V PANCARIBE on October 12, 1983, the final sale did not occur until August 7, 1984. At that sale the high bidder for each of the vessels was Greyhound itself, which bid $95,000.00 for each vessel. On August 17, 1984, Transamerica filed an objection to the confirmation of sale of the vessels, noting that the sale price secured by Greyhound was insufficient to cover the administrative fees and expenses. Greyhound filed a reply asserting that the fees of the substitute custodian were the private responsibility of the other claimants and were not entitled to be paid as an administrative expense.
 
 
 11
 On October 5, 1984, the court entered an order confirming the sale of the vessels to Greyhound for the bid price of $95,000.00 each, reciting that "[t]he Court finds that, although the high bid of $95,000.00 does not even cover all the administrative expenses, it is in the interest of justice to confirm the sale at this time so as not to incur increased administrative expenses pending another attempt at sale." This order also directed that the fund be distributed in the following order of priority: 1) all expenses actually incurred by the Marshal (including the Marshal's commission), 2) all advertising expenses, 3) dockage expenses, and 4) expenses of the substitute custodian appointed by the court.
 
 
 12
 Transamerica, supported by other claimants, filed a motion for reconsideration which was denied by the court. After the other expenses were paid, the remaining funds were inadequate to cover the fees of the substitute custodian, leaving a $120,930.33 deficiency on its invoices. Forsht then filed a motion to intervene seeking compensation for the shortfall from the parties to the action. The district court denied that motion. Meanwhile, the clerk disbursed the sale funds in the registry.
 
 
 13
 On January 3, 1985, Forsht filed this action against Transamerica to recover the $120,930.33 deficit. Forsht sought to hold Transamerica liable for the entire amount due because Transamerica was the party which had arranged for Forsht's custodianship and had moved for Forsht's appointment as the substitute custodian. Transamerica answered and filed a third-party complaint impleading each of the arresting and intervening claimants in the underlying in rem actions against the M/V PANATLANTIC and the M/V PANCARIBE. Several of the third-party defendants filed either a motion for judgment on the pleadings or a motion to dismiss, which motions were granted by the court. Transamerica appealed these judgments. Subsequently the remaining third-party defendants also filed motions for judgment on the pleadings or motions for dismissal, which were also granted, leaving only Forsht and Transamerica as parties to this action. At that point Forsht moved for leave to amend its complaint to state a cause of action directly against each of the third-party defendants and Transamerica moved for an order granting an interlocutory appeal of the dismissals. The court denied both motions. Forsht and Transamerica then reached a settlement of the case, pursuant to which Forsht took a final judgment against Transamerica in the amount of $146,674.93. Transamerica paid Forsht $107,000.00 and took an assignment of the full judgment. Both parties filed appeals, Forsht from the denial of its motion to amend, and Transamerica from the dismissals and judgments on the pleadings granted to each of the third-party defendants. These two appeals, together with Transamerica's earlier appeal, were consolidated. After the appeals were filed Transamerica reached an accommodation with each of the appellee/third-party defendants, except Greyhound.
 
 
 14
 Before reaching the issues on appeal we must first address Greyhound's contention that this court has no jurisdiction over Forsht's appeal. Through this appeal Forsht challenges the district court's denial of its motion for leave to amend its complaint to state direct causes of action against each of the third-party defendants. According to Greyhound, Forsht's subsequent settlement with Transamerica renders a review of the district court's action moot. We agree. As noted in the factual summary, Forsht and Transamerica stipulated to the entry of a final judgment in the amount of $146,674.93, an amount which included full compensation for Forsht's damages, plus interest. In satisfaction of this judgment Forsht accepted $107,000.00 and assigned the full judgment to Transamerica. Forsht now contends that because it accepted less than the full judgment, it still has a cause of action for the $39,674.93 difference. This argument overlooks the fact that Forsht has assigned to Transamerica its right to that recovery. The judgment for the entire amount of pleaded damages having been fully satisfied, at least as far as Forsht is concerned, Forsht's claim is extinguished and the appeal is therefore moot. See generally 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure, Sec. 3533.2 (1984).
 
 
 15
 Transamerica's appeals challenge the district court's dismissal of its third-party complaints against each of the third-party defendants. The issue raised by Transamerica's appeals is whether the third-party defendants, as lienholders and claimants in the underlying in rem action, are liable for a proportionate share of the administrative expenses of that suit.[2] We hold that the intervening or arresting claimants (third-party defendants) are potentially liable, along with Transamerica, and accordingly reverse the judgment of the district court.
 
 
 16
 In order to better understand our conclusion, an overview of the purposes and procedures inherent in an in rem action is helpful. A maritime lienholder initiates an in rem procedure against a vessel, or other property subject to the lien, by filing a complaint stating with particularity the circumstances from which the claim arises, describing the property subject to the lien and averring that the property is within the district or will be during the pendency of the action. Fed.R.Civ.P., Adm.Supp. C(2). If the reviewing court determines from the complaint that conditions for an in rem action exist, the clerk prepares and delivers to the Marshal a warrant for the arrest of the vessel. At this point the United States Marshal seizes or arrests, the vessel.[3] This seizure is the essential ingredient of the in rem proceeding.
 
 
 17
 Neither stipulation of in rem jurisdiction, nor appearance by the owner in personam, nor filing of a claim of owner, nor even the fact that the court may permit proceedings to continue to judgment on the merits, can create, or substitute for the essential ingredient for in rem jurisdiction and an in rem proceeding, i.e., judicial seizure and custody of the property proceeded against.
 
 
 18
 J. Rogers, Enforcement of Maritime Liens and Mortgages, 47 Tulane L.Rev. 767, 769 (1972-73). After arrest, the Marshal is responsible for preserving and safeguarding the arrested property. Title 28 U.S.C. Sec. 1921 (West Supp.1987), therefore, instructs him to collect, in advance, sufficient fees to cover ten days' keeper's fees. Additional advance payments are required as the property continues to be held in custody. The necessity for advance payment stems from the fact that no employee has the right to obligate government funds to defray costs or expenses incurred in seizures on behalf of private litigants. 31 U.S.C. Sec. 1341 (1983).
 
 
 19
 As an alternative to placing a keeper aboard a vessel, under the Marshal's surveillance, the plaintiff may choose to have a substitute custodian appointed. The appointment is conditioned on both the acceptance by the substitute custodian of all responsibility and liability during the appointment and on the moving party's agreement to hold the United States and the Marshal harmless from any claims arising during the substitute custodianship. See generally, Manual, 1972 A.M.C. at 580-81.
 
 
 20
 In almost every case of the arrest of a vessel lienors other than the initiating plaintiff will surface and will normally also seek to proceed against the vessel. Two courses of action are available to these lienholders. They can either initiate an independent in rem action or move to intervene in the existing action. In the present case numerous lienholders were involved, some initiated their own in rem actions and deposited advance funds with the Marshal, others intervened in Transamerica's action.
 
 
 21
 Upon sale of the arrested vessel the proceeds are distributed in order of priority of liens.[4] Claims arising out of the care and operation of the vessel while it is in the custody of the court are not actually considered liens, as no lien can attach to a vessel while she is in judicial custody. However, the right of a person providing such services to claim reimbursement from the sale proceeds, ahead of all lienors, as an administrative cost, was recognized by the Supreme Court in New York Dock Co. v. Steamship Poznan, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927). According to the Court such claims are paid as "expenses of justice" in priority to all lien claims when the dictates of "equity and good conscious" so require.
 
 
 22
 In the present case the district court ordered that these "expenses of justice" be paid first out of the proceeds of the sales.[5] Although not all the expenses ordered to be given priority were expenses incurred by the substitute custodian Forsht (e.g. dockage fees), all were expenses owed for the care and operation of the vessels while in custody. Payment of these administrative expenses completely depleted the proceeds of the sale, while not covering all the costs incurred by Forsht. The question arises therefore, whether the substitute custodian has a right to payment from any source other than the vessels and, if so, whether all intervening and arresting claimants are liable for the excess administrative costs.
 
 
 23
 The first part of this question is easily answered. Certainly any claimant has the right to proceed not only against the property giving rise to the debt (in an in rem action) but also against the entity responsible for the debt (in an in personam action). See Fed.R.Civ.P., Adm.Supp. C(1)(b) and B. In this case Forsht sued Transamerica alleging that Transamerica entered into a contract with it for the provision of custodial services. Assuming the allegations of a contractual obligation to be true,[6] the question then becomes whether under any conceivable set of facts the third-party defendants could be liable to Transamerica. See Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
 
 
 24
 Transamerica advances three possible theories to support liability on the part of the third-party defendants: 1) contactual liability as third-party beneficiaries, 2) contribution, and 3) unjust enrichment. The district court rejected all three theories.
 
 
 25
 Whether considered under a claim for contribution or unjust enrichment, we hold that Transamerica has stated a claim against the third-party defendants.[7] By arranging for a substitute custodian for the vessels, Transamerica performed two valuable services. First, it safeguarded the vessels, thereby protecting the value of the property, and two, it provided for such safekeeping at a cost lower than that charged by the United States Marshal's office. Clearly these two services benefited all claimants interested in the vessels by maximizing the potential proceeds recoverable from the sale of the vessels. We find it inconceivable that by being the first party to arrest the vessels, and thereby being the party to arrange for a substitute custodian, Transamerica should become wholly liable for the administrative expense of maintaining the vessels. Greyhound has not cited, nor have we found, any support for such a proposition. In fact the relevant law, meager though it is, clearly supports the idea that all claimants share in the administrative expenses.
 
 
 26
 In The JOHN WALLS, JR., 13 Fed.Cas. 902 (D.Mass.1849) (No. 7,432), the court was confronted with apportioning custody fees in respect of a vessel arrested, seriatum, by two lien claimants. The court stated:
 
 
 27
 A question of the mode of taxing costs subsequently arose. It appeared that the vessel was in the custody of the marshal, upon a previous libel, when this suit was instituted, and that it had been the practice of the marshal, where he held property by virtue of two warrants of arrest, to charge the whole custody fees in the first suit; but THE COURT directed that they should be apportioned equally, charging one-half to each suit.
 
 
 28
 Id. at 903. In The CIRCASSIAN, 5 Fed.Case. 710 (S.D.N.Y.1873) (No. 2,725), the court was confronted with the same question but with more parties. Relying upon The JOHN WALLS, the court held:
 
 
 29
 The proper rule in the present cases is to divide the per diem custody fee, for each day, equally among the cases wherein the vessel was held by process in force on such day, saving to the marshal in case any party fails to pay his proper proportion, a remedy therefore against the other parties.
 
 
 30
 Id. at 710-11. That all claimants should bear a proportionate burden of the administrative expenses is made more evident by the fact that these expenses are given top priority in the order of distribution. In a situation in which the proceeds from the sale of a vessel are adequate to cover administrative expenses and the other claims, all claimants "pay" the administrative expenses because payment of those expenses diminishes the fund from which the claimants receive their pro rata distribution.[8]
 
 
 31
 Greyhound's primary argument against third-party liability is that the administrative expenses should have been taxed as costs during the initial in rem action, and that because they were not taxed at that point, Forsht and Transamerica waived any right to recovery in a later action. While it is true that the expenses incurred by the Marshal are taxable as costs, 28 U.S.C. Sec. 1921, this is by no means the only method for collection of administrative expenses. Section 1921 merely delineates those expenses which the Marshal is entitled to tax as costs, and requires advance payments, in order that the United States be assured of recovery for services it renders. Certainly a substitute custodian who provides services pursuant to a private contract may bring an action for breach of that contract.
 
 
 32
 Because the district court refused to consider any theory of third-party liability it dismissed, or granted judgment on the pleadings to, all third-party defendants impleaded by Transamerica. For the foregoing reasons we hold that the district court improvidently released these third-party defendants and accordingly we REVERSE and REMAND the case to the district court for proceedings consistent with this opinion.[9] As noted earlier, we hold that the appeals consolidated with this one (Nos. 85-5974 and 86-5341) are moot.
 
 
 
 [1]
 Title 11 U.S.C. Sec. 1101 et seq. (1979 & West Supp.1987)
 
 
 [2]
 On October 31, 1985, Transamerica filed an appeal (Case No. 85-5974) from the district court's October 18, 1985, order in which the district court granted motions by several, but not all, third-party defendants for dismissal or judgment on the pleadings. This court sua sponte questioned whether we had jurisdiction over this appeal due to the fact that the district court's order of October 18, 1985, was not a final judgment. We postponed determination of the jurisdictional issue, pending joint consideration of all three appeals. It is now clear that we need not decide this jurisdictional question. The subsequent appeal by Transamerica, filed May 20, 1986, is without doubt an appeal from a final judgment and explicitly assigns as error the district court's October 18, 1985, order granting the dismissals/judgments on the pleadings. We, therefore, need only consider Transamerica's last appeal (Case No. 86-5376)
 
 
 [3]
 Detailed guidelines for the Marshal to follow in arresting property are set forth in "Manual for United States Marshals--Procedures in Admiralty," 1972 A.M.C. 569 (March 1972) ("Manual")
 
 
 [4]
 For a discussion of priority among maritime liens see G. Gilmore & C. Black, The Law of Admiralty, Secs. 9-58 to 9-76 (2d ed. 1975)
 
 
 [5]
 Throughout the in rem proceedings the district court consistently stated that all expenses necessarily incurred by the Marshal or substitute custodian would be deemed administrative expenses and deducted first from the proceeds of any auction. No party has challenged the district court's implicit determination that "equity and good conscience" require this ordering of priorities
 
 
 [6]
 On a motion to dismiss, all well pleaded allegations of the complaint are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)
 
 
 [7]
 The district court rejected the theory that the third-party defendants could be liable as third-party beneficiaries based on the factual determination that "[t]he Forsht/Transamerica agreement was entered into prior to the intervention of any third-party defendants herein." (D.C. Order, p. 3). This "fact" is not apparent from Forsht's initial complaint or from Transamerica's subsequent third-party complaint. Whether the district court was correct on this point, however, is immaterial as we find that the other two theories advanced by Transamerica support potential liability
 
 
 [8]
 We recognize that in this particular case no claimant realized a recovery on its lien, and that requiring payment of administrative costs therefore appears, at least initially, unfair. However, the possibility of recovery served as a sufficient incentive to cause each claimant to either file its own in rem action or intervene in the action filed by Transamerica. Pursuit of this possibility necessarily carries with it an attendant responsibility to preserve the property, for without a preservation of the property no recovery is even possible
 
 
 [9]
 Upon remand a determination must be made as to whether Transamerica was in fact liable to Forsht. Because final judgment for the third-party defendants was entered following motions to dismiss or motions for judgments on the pleadings no factual determinations were made. Certainly third-party liability is contingent on direct liability on Transamerica's part