[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-13172

Non-Argument Calendar

_____

NAVAL LOGISTICS, INC.,
d.b.a. Middle Point Marina,

                    Plaintiff-Third Party Defendant-Appellee,

*versus*

M/V FAMILY TIME,
in rem,
ANDREW VILENCHIK,
in personam,

                    Defendants-Third Party Plaintiff-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-22379-RNS

_____

Before GRANT, LAGOA, and TJOFLAT, Circuit Judges.

PER CURIAM:

Maritime law, like any area of law, provides remedies when obligations go unmet. When a marina furnishes services to a vessel—dockage, inspections, or repairs—and the vessel's owner fails to pay or retrieve the vessel, the law affords a straightforward solution. The marina may assert a maritime lien, arrest the vessel, and, if necessary, seek judicial approval to sell it.

This case follows that path. The marina here—Middle Point Marina performed services for the M/V Family Time, received no payment, and turned to the courts for recourse. The District Court authorized the Marina to serve as custodian of the vessel, approved a sale to mitigate continued storage losses, and granted summary judgment recognizing a lien. Because we find no reversible error, we affirm all three rulings.

## I. Background

In May 2023, Mr. Vilenchik delivered his vessel, the M/V Family Time, to Middle Point Marina in Florida for an inspection and possible repairs. He executed a Shipyard Agreement with the Marina identifying himself as the owner and acknowledging the potential for charges related to dockage and services. The Marina

conducted an inspection and determined that additional repairs were needed. Mr. Vilenchik declined to proceed with those services.

At that point, his obligations under the agreement were clear: he was required to either accept the services or remove the vessel. He did neither. Instead, he left the vessel at the Marina without payment. His attorney sent a "cease and desist" letter to the Marina with instructions to stop all work on the vessel.

Faced with the vessel's continued presence and Mr. Vilenchik's unpaid, accruing storage fees, the Marina initiated an admiralty proceeding in the District Court for the Southern District of Florida. It filed a complaint that sought a maritime lien for unpaid services, foreclosure of that lien, and pure salvage. The Marina then moved for an arrest of the vessel. It also moved to appoint itself as custodian for the vessel. The District Court granted both motions. The Marina later moved for interlocutory sale of the vessel, alleging that it had incurred excessive storage fees. The Court granted the motion, noting that

> almost six months have passed since arrest (and over eight months since the vessel has been in Middle Point's custody) without sign of [the owner] securing the M/V Family Time or explanation for the delay. Interlocutory sale is therefore appropriate due to unreasonable delay in the owner securing the M/V Family Time.

*Naval Logistic, Inc. v. M/V Fam. Time*, No. 23-22379-CIV, 2024 WL 828124 at *2 (S.D. Fla. Feb. 27, 2024).

## II. Discussion

### A.  The Maritime Lien and Summary Judgment

Federal law grants a maritime lien to any person who provides "necessaries" to a vessel on the order of the owner or an authorized agent. 46 U.S.C. § 31342(a). "Necessaries" include dockage, repairs, and inspections. *Id.* § 31301(4).

So "[t]o obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent." *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999) (per curiam); *see also Sweet Pea Marine, Ltd., v. APJ Marine, Inc.*, 411 F.3d 1242, 1249–50 (11th Cir. 2005).

The Marina satisfied each requirement. It provided dockage and inspection services—clearly "necessaries" under the statute. Mr. Vilenchik requested these services under the Shipyard Agreement, for which the Marina billed him. He did not pay. These undisputed facts support the authorization of the lien. The District Court properly entered summary judgment in the Marina's favor.

Mr. Vilenchik argues that the Marina damaged his vessel. But even if true, that allegation would not invalidate the lien. The appropriate remedy would be a counterclaim or separate action.[1]

---

[1] The vessel sought to file a counterclaim, but the District Court denied the request as untimely. *See Naval Logistic, Inc. v. M/V Fam. Time*, No. 23-22379-CIV, 2024 WL 1071965 (S.D. Fla. Mar. 12, 2024). The Court explained that the defendant offered no justification beyond its own lack of diligence. *Id.* at *2. To the extent the defendants challenge that ruling, we see no abuse of discretion in that decision.

The alleged damage does not raise a genuine dispute of material fact as to whether the Marina's lien exists.[2]

### B.  Appointment of a Substitute Custodian

Ordinarily, the U.S. Marshal takes custody of an arrested vessel. *See Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1560 (11th Cir. 1987). But Marshal custody can be costly. To reduce expenses and safeguard the vessel, courts often appoint a substitute custodian. *See id.*; Fed. R. Civ. P. Supp. R. E(4)(b). In fact, the Southern District of Florida has a local rule noting that "it is the practice of the Marshal to not take custody of any arrested vessel or execute an arrest warrant until [a] substitute custodian is in place." S.D. Fla. L. Admir. R. E(10)(a).

A substitute custodian assumes responsibility for safekeeping the vessel, subject to court supervision. *See Donald D. Forsht Associates, Inc.*, 821 F.2d at 1560. To qualify, the proposed custodian must accept full responsibility, carry appropriate insurance, and agree to hold the United States and the Marshal harmless from any liability arising during the custody. *Id.*

---

[2] Mr. Vilenchik also argues that summary judgment was improper because he is not the vessel's true owner and did not authorize the services. But the record defeats that claim. He personally delivered the vessel to the Marina, signed the Shipyard Agreement identifying himself as the owner, and remained the sole point of contact throughout their dealings. Even if Commercial Holdings Group, Inc. held title, Vilenchik acted with apparent authority to procure services. That is enough to support a lien under 46 U.S.C. § 31342(a). *See Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999) (per curiam).

The Marina satisfied those conditions. It already had custody of the M/V Family Time, was experienced in vessel care, and maintained proper insurance. The Marina formally agreed to the custodianship terms, and the District Court found no reason to doubt its ability to safeguard the vessel.

Mr. Vilenchik objected to that appointment, but his objections lacked substance. He pointed to no specific risk, conflict, or inadequacy in the Marina's qualifications. Without more, his disagreement did not require the Court to reject the appointment. We find no error in the Court's decision.

### C.  The Interlocutory Sale

Federal courts have authority to order the sale of an arrested vessel before final judgment—known as an interlocutory sale—under certain circumstances. *See* Fed. R. Civ. P. Supp. R. E(9). That relief is appropriate where "the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action" or where "the expense of keeping the property is excessive or disproportionate." *See id.*

Here, all factors supported sale. By the time the District Court considered the issue, the Marina had incurred over $25,000 in storage fees. Meanwhile, Mr. Vilenchik had not posted bond, filed a verified claim, or sought to recover the vessel despite receiving notice of the arrest. Courts are not required to let storage costs accumulate indefinitely in the hope that the owner might eventually act. *See id.* When a vessel's continued detention imposes

substantial costs and the owner remains absent, an interlocutory sale preserves the vessel's value and mitigates waste.

The District Court considered the relevant factors and concluded that sale was warranted. We find no error in that decision.

### III. Conclusion

Federal maritime law provides a clear and orderly process for enforcing liens and resolving disputes involving vessels. The District Court followed that process. It found a valid lien, appointed an appropriate custodian, and approved a sale to avoid unnecessary costs. Each decision was grounded in the record and consistent with established legal principles. Mr. Vilenchik has identified no reversible error. We affirm.

**AFFIRMED.**