STANDARD MARINE INSURANCE COMPANY, LIMITED, *v.* SCOTTISH METROPOLITAN ASSURANCE COMPANY, LIMITED.

No. 261.  Argued March 13, 16, 1931.—Decided April 13, 1931.

*Mr. Russell T. Mount* for petitioner.

*Mr. T. Catesby Jones,* with whom *Mr. James W. Ryan* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Dreyfus & Co. purchased wheat at $1.38½ a bushel, c. i. f. Montreal. The wheat was shipped on the S. S. "Glenorchy" from Port Arthur to Montreal by the seller, who had insured it, with respondent, for buyer's account, at a valuation of $1.42 a bushel, the risk to begin immediately after the loading of the vessel. Dreyfus also effected insurance, with petitioner, covering "increased value" of the grain above its c. i. f. cost. That value was stipulated to be the difference between c. i. f. cost and the highest market value per bushel between the day of sailing and the day on which cargo would have arrived at destination if the loss had not occurred, plus 5¢. The applicable clause of the policy, so far as material, is printed in the margin.*

A collision of the Glenorchy with the S. S. "Leonard B. Miller" resulted in a total loss of the cargo. In a proceeding for limitation of liability, brought by the owner of the Miller, in the District Court for Northern Ohio, both vessels were held at fault, and the cargo owner recovered $309,500 for the insured wheat, with interest from

---

* "To cover 'Increased Value' on grain owned by the Assured or in which the Assured may have an interest, such 'Increased Value' for the purposes of this insurance, to be arrived at by taking the difference between the c. i. f. invoice cost and the highest market value per bushel, plus 5c. (Five cents), as set out in the 'New York Journal of Commerce' between the day of sailing of the vessel at point of shipment, and the day of the final delivery of the complete cargo at destination as named in the Certificates, both days inclusive; and in the event of casualty, to be valued at the difference between the c. i. f. invoice cost and the highest market value per bushel, plus 5c. (Five cents) as set out in the 'New York Journal of Commerce' between the day of sailing of the vessel at point of shipment, and the day the final delivery of the complete cargo would have arrived at destination if casualty had not occurred, both days inclusive. . . ."

the date of collision. That was its value, at $1.54¾ a bushel, at the time and place of shipment, which is the value recoverable for loss of cargo by maritime tort. *The Vaughan & Telegraph,* 14 Wall. 258, 267, 268.

Respondent paid Dreyfus $284,000, the full amount of its policy. Petitioner paid $62,500, stipulated to be the amount due on its policy at the rate of 31¼¢ per bushel, the difference between $1.38½, the c. i. f. price, and $1.69¾, the highest market value within the ten days after departure required for the voyage, plus 5¢. Both insurers intervened in the limitation proceeding, each asserting its right to be subrogated to the cargo owner's right of recovery. The special commissioner to whom the matter was submitted reported that petitioner and respondent were co-insurers of cargo, and that they should share pro rata, in proportion to their policy liabilities, in the cargo owner's recovery, after payment of his expenses in litigating the claim.

The District Court decreed payment to respondent of $284,000, the full amount of its insurance liability, with interest from the date of loss, and payment to petitioner of the balance, after deducting the commissioner's fees. 28 F. (2d) 540. The Court of Appeals for the Sixth Circuit affirmed. 39 F. (2d) 436. Both courts thought that as the insurer, on payment of the loss, is subrogated only to such right of recovery as the insured had, *Phoenix Ins. Co.* v. *Erie & W. Trans. Co.,* 117 U. S. 312, and as the latter had no right to recover for any increase in value beyond that at the time and place of shipment, petitioner, so far as it had insured such an increase in value, was not entitled to participate in the recovery, since participation would amount to the assertion of a right of recovery which the insured did not possess.

This Court granted certiorari, 282 U. S. 822, on a petition setting up, as grounds for the writ, the importance of the question and an alleged conflict between the decision

below and that of the Court of Appeals for the Ninth Circuit in *Brown* v. *Merchants' Marine Ins. Co.*, 152 Fed. 411.

Co-insurers, on payment of the loss insured against, are subrogated to the right of the insured to recover from one who causes the loss, and participate pro rata in the recovery. As the policy liabilities of the present insurers were occasioned by the destruction of the same cargo by the same peril, and as the insured has recovered for its destruction by that peril, the question precisely stated is not whether petitioner may assert, by way of subrogation, a right of recovery which the insured did not possess, but the extent to which petitioner is entitled to be subrogated to the right which the insured did possess and assert against the colliding vessels. Hence the disposition of the present case turns upon the question whether petitioner and respondent were co-insurers against the same risk, or independent insurers against different risks.

We think it clear, and it seems to be conceded, that since respondent is an insurer against loss of cargo, petitioner, if its policy be regarded as insuring against loss of profits of the venture, is not a co-insurer with respondent, even though the liability of both accrued by reason of the destruction of the cargo by the same peril. The very purpose of insurance of profits is to protect the insured against risk of loss which is not covered by insurance upon the cargo itself. See *Canada Sugar Refining Co.* v. *Insurance Co. of North America*, 175 U. S. 609; *Patapsco Insurance Co.* v. *Coulter*, 3 Pet. 222; 1 Arnould on Marine Insurance (11th ed.) §§ 236, 287, 288; cf. *O'Brien* v. *North River Ins. Co.*, 212 Fed. 102.

When the insured thus separates and separately insures two distinct elements of risk—value of cargo and profits which may be earned on it—both insurers cannot share by subrogation in his right to recover against wrongdoers for cargo damage alone. For, while destruction of the cargo has in a sense occasioned both losses, the wrong-

doer is liable for one and not the other; and hence there is no right of recovery by the insured for loss of profits to which the insurer against that loss may be subrogated. The object of subrogation is to make indemnity to the insured, up to the amount of the policy, the measure of the liability of the insurer, and that is its justification. But the liability would be less than such indemnity if the insurer could be subrogated to a right of recovery by the insured for a loss other than that insured against.

Petitioner insists that its insurance was not of anticipated profits, but of increased value of the property, not differing from any other insurance on property, with respect to which the insurer when called upon to contribute to loss of its value becomes entitled to share pro rata with other insurers of the property in any recovery by the insured against third persons causing the loss. *Brown* v. *Merchants' Marine Ins. Co., supra.* But this argument leaves out of account the peculiar nature of insurance on increased value of cargo over its value at the port of departure, which, for present purposes, is to be distinguished from insurance on hull or any other property, increase in value of which may be embraced in, and recovered under policies insuring against a loss of the property.

It has long been the accepted rule, in the law of maritime torts and of maritime insurance, that the recoverable value of cargo lost or damaged at sea is that at time and place of shipment, without allowance for increase of value or anticipated profits. *Smith* v. *Condry,* 1 How. 28, 35; *The Vaughan & Telegraph, supra,* pp. 267, 268; *The Scotland,* 105 U. S. 24, 35; *The Aleppo,* 1 Fed. Cases, No. 158; *The Umbria,* 59 Fed. 489, 490; Phillips on Insurance, §§ 1226, 1229; 1 Arnould on Marine Insurance (11th ed.) § 365; see *The Old Reliable,* 262 Fed. 108, 110; *Guibert* v. *The George Bell,* 3 Fed. 581, 584, 585. The cargo is placed at risk when the voyage begins. Its value then is the measure of the risk and of the loss suffered if the cargo

is lost or damaged on the voyage. Market value at destination on the date of the loss is not the measure, for that was not its value at the place of loss. To attribute to the cargo the market value at destination is to measure, not the loss, but the profits which would have accrued if the voyage had been completed and if the market price at the time of loss had continued to be the market price at the time of arrival.

Petitioner's policy describes the insurance as upon " increased value on grain." But so far as it covered the increase in value over that at the port of departure, it insured against a loss not covered by the insurance on cargo or recoverable against tort-feasors causing cargo loss. See *Strass* v. *Spillers & Bakers*, [1911] 2 K. B. 759; British Marine Insurance Act, Dec. 21, 1906, 6 Edw. 7, c. 41, § 16, which is a codification of the common law. Gow, Sea Insurance, p. v. (Preface). The liability on the policy above the value of cargo at Port Arthur represents profits, as valued, which it might reasonably be assumed would have accrued to insured if the cargo had reached Montreal. But whether that coverage may for all purposes be correctly described as insurance of profits or not, it can stand on no different footing in the present case, for, like insurance of profits, it covers risk of loss not covered by the cargo policy; and the reasons which preclude the insurer of profits from participating, by way of subrogation, in the recovery of the insured for maritime torts causing loss of the cargo should exclude petitioner from participation here.

Had petitioner's policy been the usual one on cargo, but to the extent only that it was not covered by respondent's insurance, petitioner's liability would not have been the 31¼¢ a bushel which it paid, the difference between c. i. f. price and the stipulated market value at destination, but 12¾¢ a bushel, the difference between the value insured by respondent and sound value at port of shipment. To

that extent petitioner and respondent would both have been insurers of cargo, entitled to share in the recovery of insured for its full loss, as the courts below permitted them to do. But petitioner's liability was for the larger amount; and so far as bound to pay in excess of the value at shipment, it insured against a risk for which there could be no recovery on the cargo policy, and for which the owner did and could make no recovery against wrongdoers for the destruction of the cargo. Petitioner may not be subrogated to a recovery for a loss against which it did not insure.

*Brown* v. *Merchants' Marine Ins. Co., supra,* on which petitioner relies, does not support its contention. In that case, a vessel having an actual value of $140,000 was insured by several time policies, in which it was valued at $75,000. There were also policies aggregating $12,200 on " disbursements and/or increased value." The vessel was sunk in collision and became a total loss, which the underwriters paid. As both vessels were at fault, the damage was divided; and the insured recovered, as net collision damages, after payment of expenses, less than the $75,000 value stated in the policies.

It was held that the insurers of increased value were entitled to share in the recovery pro rata with the other underwriters. But the recovery was based upon the loss of the total value of the ship, which, in that case, was the subject *pro tanto* of the increased value insurance. Without regard to possible rights of priority, among the several underwriters, to the fund which all were entitled to claim by subrogation, the question there was different from that presented here, where the fund recovered was for a loss against which petitioner did not insure, and to which for that reason it may not be subrogated.

*Affirmed.*