NORTHERN INSURANCE COMPANY OF NEW YORK, Plaintiff,

v.

1996 SEARAY MODEL 370DA YACHT, bearing original Hin No. SERF4860F596 U.S. Documented Vessel No. 1036727, now known as 1998 Searay Vessel Identification No. SERF3571C298, named "Rooster's Den," U.S.C.G. Documentation Number 1134679 in rem, Fat Boy, LLC, a Delaware corporation, George M. Lee III, and Carolina First National Bank in personam, Defendants.

No. CIV.A.4:04–1842–25.

United States District Court,
D. South Carolina,
Florence Division.

Feb. 13, 2006.

Order Granting In Part Motion to Amend Judgment May 12, 2006.

S Scott Bluestein, Bluestein Law Firm, Charleston, SC, for Northern Insurance Company of New York, Counter Defendant.

Paul V Degenhart, Degenhart Law Firm, Columbia, SC, for Fat Boy LLC, George M Lee, III, Counter Claimants.

Douglas Manning Muller, Moore and Van Allen, Charleston, SC, for Carolina First National Bank, Defendant.

Russell M Pfeifer, Fertig and Gramling, Ft Lauderdale, FL, for Northern Insurance Company of New York, Counter Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

WOOTEN, District Judge.

 This is a petitory [1] and possessory [2] suit to try title to a pleasure vessel. Plaintiff Northern Insurance Company of New York ("Northern") brings this admiralty action, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. Northern is the marine insurer of a 1996 Sea Ray Model 370 Yacht ("Sea Ray Yacht" or "vessel"), which was owned and registered to Eric T. Small ("Small"). The Sea Ray Yacht was stolen by Daniel Dey ("Dey") in Florida, who changed the vessel's Hull Identification Number or Serial Number assigned by the manufacturer, Sea Ray.

Thereafter, Dey sold the vessel as a 1998 model, actually a 1996 model, to defendant Fat Boy, LLC ("Fat Boy"). Using the invalid Hull Identification Number, Fat Boy obtained a second Official Number for the Sea Ray Yacht and granted a Preferred Ship Mortgage on the vessel to defendant Carolina First National Bank of Wilmington, Delaware ("Carolina First"), using the second Official Number. This sale and registration of the Sea Ray Yacht by Fat Boy occurred without the knowledge, consent or participation of Small.

Northern paid $200,000.00 to Small as a result of the theft of the vessel. Subsequently, defendant George M. Lee ("Lee"), the owner of Fat Boy, and an attorney, Paul V. Degenhart ("Degenhart"), became concerned that the Sea Ray Yacht may not have been a 1998 model as represented by Dey. Lee and Degenhart contacted Dey about the model year of the Sea Ray Yacht. Dey admitted the vessel was in fact not a 1998 model, but a 1996 model. Lee and Degenhart demanded a partial refund of the money paid to Dey. As a result, Dey refunded $40,000.00 to Fat Boy.

In its complaint, plaintiff Northern seeks to restore possession of and title to the vessel to itself and/or to Mr. Small, the original purchaser of the vessel and the person from whom the vessel was stolen. As well, Northern seeks an adjudication of any claims made by others to the vessel. Fat Boy and Lee have counterclaimed asserting that Fat Boy was a bona fide purchaser for value without notice. As well, Fat Boy and Lee seek reimbursement for all amounts expended by it for betterments,[3] maintenance, insurance, storage, and lost usage. Defendant Carolina First

---

1. "A petitory suit is defined as one seeking to try title to a vessel independently of possession." *Silver v. Sloop Silver Cloud,* 259 F.Supp. 187, 191 (S.D.N.Y.1966).

2. "A possessory action is one where a party entitled to possession of a vessel seeks to recover that vessel. It is brought to *reinstate* an owner of a vessel who alleges wrongful deprivation of property." *Silver v. Sloop Silver Cloud,* 259 F.Supp. 187, 191 (S.D.N.Y. 1966).

3. A "betterment" is defined as an improvement put upon a property which enhances its value more than mere replacement, maintenance, or repairs. *Black's Law Dictionary*

National Bank generally denies plaintiff Northern's allegations.

This case was tried before the Court, sitting without a jury, on January 23–26, 2006.[4] Having carefully considered the testimony and the exhibits admitted at trial, all pleadings and stipulations, and the argument of legal counsel, this Court now makes the following Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.[5]

## II. FINDINGS OF FACT

On August 23, 1995, Small purchased a thirty-seven foot (37') SEA RAY 370 Sundancer Yacht from Gulfwind Marine at a cost of $251,000.00. Prior to Small purchasing the vessel, Sea Ray had engraved the vessel's Hull Identification Number ("HIN")[6] into the fiberglass on the vessel's transom. The vessel's proper HIN was SER4860F596 Sea Ray. This HIN denotes that the vessel was manufactured by Sea Ray in 1996. Small named the vessel Daughter of the Moon 4 and registered her with the U.S. Coast Guard National Vessel Documentation Center ("National Vessel Documentation Center"). The National Vessel Documentation Center assigned her Official Number 1036727. The Certification of Documentation issued by the Coast Guard indicated that Small is the owner of the Sea Ray Yacht and the correct Official Number is 1036727.

Northern issued Master Mariner Yacht Policy No. YT86004216 ("Yacht Policy") to Small providing insurance coverage for the Sea Ray Yacht. Under the Yacht Policy, the coverage limits for theft or loss of the Sea Ray Yacht were $200,000.00. The policy's Salvage Value and Abandonment clause permitted Northern to take title to the vessel upon payment of a loss. Specifically, the policy's Salvage Value and Abandonment clause provided that:

> When "we" pay a loss "we" are entitled to the salvage value of the damaged property. "You" may not abandon any covered property to "us." However, at "our" option, "we" may take the damaged property or deduct the value of the damaged or salvaged property from the claim payment.

On February 27, 2001, Dey, a Florida resident, stole the Sea Ray Yacht while it was moored at her slip at Gulfwind Marina in Venice, Florida. A police report was filed. No evidence was presented that Small had any role in the theft of the vessel. After the theft of the Sea Ray Yacht, Northern fulfilled its contractual obligations with Small by paying him a total loss of $200,000.00 for the vessel under its Yacht Policy No. YT86004216. On July 31, 2001, Small executed a Power of Attorney whereby Northern Insurance

---

146 (5th ed.1979). The improvement may be either temporary or permanent. *Id.*

**4.** Prior to the trial of this case, Carolina First stipulated that the validity of its mortgage depended upon whether Fat Boy held superior title to the vessel. Carolina First further stipulated that, to the extent that it was adjudged by this Court that Fat Boy did not have superior title to the vessel at issue, it had no interest in the vessel. Accordingly, Carolina First did not appear and participate in the trial of this case.

**5.** Presently pending before this Court is the plaintiff's motion for Order of Sale directing the interlocutory sale of the vessel at issue (Doc. # 44). In lieu of this Order, this pending motion for sale is deemed moot (Doc. # 44).

**6.** A Hull Identification Number is required by the U.S. Coast Guard to be located on the transom of all vessels constructed in the United States. A Hull Identification Number is a serial number for vessels. The last two digits of a Hull Identification Number denote the year in which a vessel was constructed.

Company of New York was appointed to execute and to sign his name to assignments of title, applications for titles, or any other forms involving titles for a boat hull, motor, trailer, and applicable equipment fastened to the hull motor or trailer.

Subsequently, Dey altered the Sea Ray Yacht's HIN to SERF3571C298 and made other changes to the vessel to disguise the theft and manufacture date. Dey then advertised the sale of the vessel as a 1998 Sea Ray on an Internet website. On or about August 5, 2002, Dey signed a bill of sale conveying the Sea Ray Yacht to Fat Boy, a Delaware Limited Liability Company owned by Lee, in exchange for the sum of $127,500.00. At the time Dey issued the bill of sale to Fat Boy, the document was issued without the knowledge, consent, or participation of Small. The alleged sale was not consummated through a boat dealer, retailer, distributor or seller of like goods.

Fat Boy then granted a Preferred Ship Mortgage on the Sea Ray Yacht to Carolina First. The Preferred Ship Mortgage indicates that Fat Boy granted a mortgage on a Sea Ray Yacht named Rooster's Den with an incorrect HIN of SERF3571C298. On October 14, 2002, Degenhart, as a result of Dey's actions and as attorney-in-fact for Fat Boy, registered the Sea Ray Yacht with the National Vessel Documentation Center under the name Rooster's Den. On the application, Degenhart used the incorrect and altered HIN, and listed the vessel's managing owner as Fat Boy. Carolina First filed the Preferred Ship Mortgage on the Sea Ray Yacht, whose name by this time had been changed to Rooster's Den, with the National Vessel Documentation Center. The registration of the Sea Ray Yacht and the filing of the mortgage with the National Vessel Documentation Center occurred without the knowledge and approval of Small.

Some time thereafter, Lee and Degenhart became concerned that the Sea Ray Yacht may have been manufactured in 1996, not 1998, as previously indicated by Dey. Lee and Degenhart, as Fat Boy and Lee's attorney, confronted Dey about the incorrect model year of the Sea Ray Yacht. Dey admitted that he had altered the vessel's HIN to disguise the actual manufacture date. In response to learning that the Sea Ray Yacht had the HIN altered, Lee and Fat Boy demanded Dey return $40,000.00 of the money Fat Boy had paid Dey. Dey returned $40,000.00 to Lee and Fat Boy by wire transfer. On or about February 20, 2003, Degenhart sent a settlement agreement to Dey concerning payment of the $40,000.00. Lee signed the agreement, but Dey apparently did not.

Approximately one year after receiving the money back from Dey, Fat Boy and Lee attempted to trade the Sea Ray Yacht to a vessel dealer for another vessel that Lee wanted to purchase. At that time, it was determined that the vessel had been stolen and Small was informed of the whereabouts of the vessel.

On February 27, 2004, Small, through his attorney, wrote a letter to Degenhart demanding that Lee and Fat Boy return the Sea Ray to Small. Lee and Fat Boy did not return the vessel to Small. On March 15, 2004, Small's attorney wrote a second letter to Degenhart demanding that Lee and Fat Boy return the Sea Ray to Small. Again, Lee and Fat Boy did not return the vessel to Small.

In order to take possession of the vessel from Lee and Fat Boy, and to clear the vessel's title, Northern instituted the instant action. On June 25, 2004, the Sea Ray Yacht was arrested by the U.S. Marshal Service and has remained in the custody of the U.S. Marshal since the date of arrest. Lee and Fat Boy had possession and use of the Sea Ray Yacht from August

2002 through the date of her arrest in June 2004.

Based upon the preponderance of the evidence presented and controlling case law, this Court finds that the Sea Ray Yacht rightfully belongs to Northern. Small did not have knowledge of or consent to Dey's "sale" of the vessel to Fat Boy and/or the alteration of the vessel's HIN. Additionally, as is apparent, Small did not sell the vessel to Fat Boy or Lee. Dey did not have valid title to the Sea Ray Yacht when he issued a bill of sale to Fat Boy. The "sale" of the Sea Ray Yacht between Dey and Fat Boy was not consummated through a boat dealer, retailer, distributor or seller of like goods. Dey is not a boat dealer, retailer, distributor, or seller of like goods. Neither Lee nor Fat Boy ever possessed valid title to the Sea Ray Yacht.

Since Lee and Fat Boy did not have valid title to the Sea Ray Yacht, neither Lee nor Fat Boy could grant a Preferred Ship Mortgage to Carolina First. A Preferred Ship Mortgage can only be granted by the owner of a vessel. Therefore, Lee and Fat Boy did not have authority to grant a Preferred Ship Mortgage on the subject Sea Ray Yacht.

The Court further finds that there is insufficient evidence upon which it can be concluded that either Lee or Fat Boy had knowledge that the Sea Ray Yacht was stolen prior to their attempted trade-in of the vessel. Dey, a convicted felon sentenced to fifteen (15) years probation in connection with his unlawful conduct in this case, is deemed not credible.

Furthermore, while Fat Boy and Lee have not presented sufficient evidence to support the allegations of its counterclaim that they are entitled to title and possession of the vessel or that Northern improperly arrested the Sea Ray Yacht, they are entitled to reimbursement for alleged im-provements made to the vessel while in their care, custody and control. Testimony in the record indicates that Fat Boy and/or Lee expended substantial sums for the betterment of the vessel during their possession.

Generally, testimony has been presented indicating that certain sums were spent to improve the vessel. Specifically, Fat Boy and Lee argue that between $65,000.00 and $75,000.00 was expended by them for the betterment of the vessel while it was in their possession. The condition of the vessel during the time in which Lee had care, custody, and control was described by witnesses as being pristine and well-maintained. By all accounts the vessel was well cared for and properly maintained by Lee. For example, betterments were alleged to include a new generator, canvas, risers, shafts, electronics, engines, forward air conditioning, engine flushers, vinyl repair, and engine belt.

Moreover, as a direct result of Northern paying Small $200,000.00 under the Yacht Policy, and since Small had no part in the theft and subsequent sale of the Sea Ray Yacht to Fat Boy or Lee, Northern is the owner of the vessel as will be further discussed below.

In making the above findings of fact, reference has been made to certain parts of the record; however, the Court has taken into consideration all of the evidence presented. The Court specifically finds that credible evidence, after considering the appearance, demeanor and qualifications of the witnesses and the testimony as a whole, supports each of the above findings by a preponderance of the evidence.

## III. CONCLUSIONS OF LAW

■ This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil

Procedure. This case falls within the admiralty jurisdiction of a federal court. A suit to try title to or possession of a vessel wrongfully taken has long been considered within the jurisdiction of admiralty courts. *Ward v. Peck,* 59 U.S. (18 How.) 267, 15 L.Ed. 383 (1855); *Gallagher v. Unenrolled Motor Vessel River Queen,* 475 F.2d 117, 119 (5th Cir.1973); *Atamanchuck v. Atamanchuck,* 61 F.Supp. 459 (D.N.J.1945). Courts have consistently recognized the maritime nature of questions involving the title and possession of vessels.

Initially, the defendants contend that the sales transaction between Dey and Fat Boy conveyed legal title of the vessel to Fat Boy. The undersigned disagrees.

Whether the transaction between Dey and Fay Boy gave Fat Boy legal title to the Sea Ray Yacht depends on whether a "sale" occurred. *See Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht,* 625 F.2d 44, 47 (5th Cir.1980); *Hozie v. The Vessel HIGHLAND LIGHT,* 1998 WL 938586, 1998 AMC 2829 (C.D.Cal.1998).

■ The Sea Ray Yacht constitutes "goods" within the meaning of Florida's Uniform Commercial Code.[7] *See Puamier v. Barge BT 1793,* 395 F.Supp. 1019, 1028 (E.D.Va.1974)(vessels are goods under the Uniform Commercial Code); *Hozie v. The Vessel HIGHLAND LIGHT,* 1997 WL 1066494, 1998 AMC 2829 (C.D.Cal.1998)(vessels are goods with meaning of California Commercial Code).

■ Under Florida law, a purchaser of goods acquires all title which his transferor had or had power to transfer. § 672.403(1), Fla. Stat. (1989); *Green Tree Acceptance, Inc. v. Zimerman,* 611 So.2d 608 (Fla. 2nd DCA 1993). Substantial case law supports the proposition that a thief cannot pass valid title to goods to a buyer. *See e.g. Battles v. State of Florida,* 602 So.2d 1287, 1288 (Fla.1992). "It is of course the general rule that a thief such as Verdi cannot pass good title." *Alamo Rent–A–Car, Inc. v. Williamson Cadillac Company,* 613 So.2d 517, 518 (Fla. 3rd DCA 1993). "Florida follows the general rule that one who acquires possession of property by theft cannot confer good title by its sale, even to a bona fide purchaser." *Brown & Root, Inc. v. Ring Power Corp.,* 450 So.2d 1245, 1246 (Fla. 5th DCA 1984).

■ With regards to the rights a purchaser obtains from a thief, "[a]t best, a purchaser in good faith has the title and right to possession of the property against all except the rightful owner." *Id.* "In Florida a purchaser cannot obtain clear title from a thief to defeat the original owner. The most a bona fide purchaser for value in Florida can obtain from a thief is superior title to everyone except the original owner." *Id.* at 1247.

■ It is uncontested that Dey stole the Sea Ray Yacht from Small, and therefore, Dey did not have valid title to the vessel. Fat Boy, by putatively purchasing the vessel from Dey, could not acquire any better title to the vessel than Dey possessed, and

---

**7.** As Small is a Florida resident, the Sea Ray Yacht was stolen from her berth in Florida, Dey is a Florida resident, the agreement between Dey, Lee and Fat Boy arose in Florida, and payment and delivery of the Sea Ray Yacht to Lee and Fat Boy occurred in Florida, it is reasonable to conclude Florida state law and its Commercial Code applies to this transaction. *See Puamier v. Barge BT 1793,* 395 F.Supp. 1019, 1028 (E.D.Va.1974)(apply-ing Florida law since the parties were incorporated in Florida, the contract was signed in Florida, and the vessel was located and delivery effected in Florida); *Hozie v. The Vessel HIGHLAND LIGHT,* 1997 WL 1066494, 1998 AMC 2829 (C.D.Cal.1998)(California law applied as the agreement to purchase the vessel arose in California and payment for the vessel and delivery of her occurred in that state as well).

hence did not obtain valid title to the Sea Ray Yacht from Dey. Consequently, Fat Boy, Lee and Carolina First cannot succeed on their claim that Fat Boy obtained valid title to the Sea Ray Yacht from Dey. Dey could not convey title to Fat Boy because Dey himself did not have valid title to the vessel. Fat Boy has no possessory or ownership right to the Sea Ray Yacht as to the rightful owner. No evidence was presented that Small agreed to provide either Dey or Fat Boy with title to the Sea Ray Yacht. Legal title to the Sea Ray Yacht never vested in Fat Boy or Lee.

Although Fat Boy possesses a certificate of documentation for the vessel under the incorrect HIN that is "not conclusive evidence of ownership in a proceeding in which ownership is in issue." 46 U.S.C. § 12104(3); *Hozie v. The Vessel Highland Light*, 182 F.3d 925, 1999 WL 313650 (9th Cir.1999). In particular, The Fifth Circuit Court of Appeals has noted "federal registration does not, of itself, confer emoluments of title and ownership to a vessel." *Jones*, 625 F.2d at 48. The Certificate of Documentation was obtained using an invalid HIN on the application and a bill of sale with the incorrect HIN as well. At the time the application was submitted to the National Vessel Documentation Center and the bill of sale executed, the Sea Ray Yacht was already documented by Small under the correct HIN issued by the manufacturer.

■■■ The federal vessel recording statute "was passed to furnish information as to title and to protect bona fide purchasers." *James Stewart & Co. v. Rivara*, 274 U.S. 614, 47 S.Ct. 718, 720, 71 L.Ed. 1234 (1927). It is without dispute that Small properly documented or recorded the vessel in accordance with the federal recording statute. For this reason, Small is entitled to protection as the Sea Ray Yacht's bona fide purchaser from a Sea Ray Dealership. Although Fat Boy did file a bill of sale with the National Vessel Documentation Center, it cannot obtain legal title against Small, because it did not obtain good or valid title from Dey.

Moreover, as a result of the contractual agreement between Northern and Small, and the law of subrogation, Northern properly initiated the instant legal action. As noted above, the insurance policy's Salvage Value and Abandonment clause permitted Northern to take title to the vessel upon payment of a loss. Specifically, the policy's Salvage Value and Abandonment clause clearly and unambiguously provided that:

> When "we" pay a loss "we" are entitled to the salvage value of the damaged property. "You" may not abandon any covered property to "us." However, at "our" option, "we" may take the damaged property or deduct the value of the damaged or salvaged property from the claim payment.

In this same regard, after the theft of the Sea Ray Yacht, Northern fulfilled its contractual obligations with Small by paying him a total loss of $200,000.00 for the vessel pursuant to its Yacht Policy No. YT86004216. Small also executed a Power of Attorney whereby Northern Insurance Company of New York was appointed to execute and to sign his name to assignments of title, applications for titles, or any other forms involving titles for a boat hull, motor, trailer, and applicable equipment fastened to the hull motor or trailer.

■■■ It is well established general maritime law that an underwriter who pays a claim becomes subrogated to its insured's right of recovery. *Standard Marine Ins. Co. v. Scottish Metropolitan Assur. Co.*, 283 U.S. 284, 287, 51 S.Ct. 371, 75 L.Ed. 1037 (1931); *Tokio Marine & Fire Ins. Co. v. M/V TURQUOISE*, 2001 WL 939826 (D.S.C.2001).

█ In this case, it is undisputed that Northern paid Small $200,000.00 for the loss of the vessel pursuant to the parties' marine insurance policy. That policy further provided Northern with the right to take possession of the vessel pursuant to the Salvage Value and Abandonment Clause. In fact, Small also executed a Power of Attorney whereby Northern Insurance Company of New York was appointed to execute and to sign his name to assignments of title, applications for titles, or any other forms involving titles for a boat hull, motor, trailer, and applicable equipment fastened to the hull motor or trailer. Thus, pursuant to its equitable right of subrogation under the general maritime law and its contractual rights with Small, this Court concludes that Northern is permitted to maintain this action to recover the vessel at issue and to have her title cleared. This Court could have allowed an amendment to the complaint adding Small as a party, but chose not to do so, concluding that it was not necessary for the reasons set forth.

Northern has also sought the recovery of all *in custodia legis* expenses incurred by it during this litigation in connection with the vessel. The award of *in custodia legis* expenses is typically allocated to all claimants by virtue of their common interest in a fund or property in the custody of custody of the court, such as multiple lien claimants interested in a vessel subject to seizure under Supplemental Admiralty Rule C. *See, e.g. The Poznan,* 274 U.S. 117, 121, 47 S.Ct. 482, 71 L.Ed. 955 (1927) ("[t]hey result rather from the self-imposed duty of the court, in the exercise of its accustomed jurisdiction, to require that expenses which have contributed either to the preservation or creation of the fund in its custody shall be paid before a general distribution among those entitled to receive it"). However, no common interest in any such "fund" exists between the parties. Instead, Northern, Fat Boy, and Lee each allege legal and superior title to the vessel.

In this case, the decision to move to arrest and seize the vessel and incur *custodia legis* expenses was made solely by the plaintiff in an attempt to protect the vessel. Neither defendants Fat Boy and/or Lee consented to this motion. To the contrary, plaintiff arrested the vessel and caused it to be stored in dry dockage in Charleston, South Carolina. While this Court notes the plaintiff's decisions relative to arrest and seizure may have been justified to protect the vessel and the plaintiff's interest, the decisions concerning where and how the boat would be arrested, stored, and any costs of storage were made only by the plaintiff. For this reason, and in this Court's exercise of its equitable discretion, the Court concludes that the plaintiff shall be responsible for all *in custodia legis* expenses arising from the seizure, sale, or ultimate disposition of the vessel under Supplemental Admiralty Rule D.

Next, the defendants Lee and Fat Boy assert by way of counterclaim that they are entitled to be reimbursed for certain "betterments" made to the vessel while it was in their care, custody, and control. This Court agrees.

█ In particular, equity permits Lee and Fat Boy to be reimbursed for betterments made to the Sea Ray Yacht. This Court sitting in admiralty is akin to a court in equity. *See Montauk Oil Transp. Corp. v. Sonat Marine, Inc.,* 871 F.2d 1169, 1172 (2nd Cir.1989) (Although a court sitting in admiralty is not a traditional court of equity, by now the law is well established that an admiralty court may use equitable principles where appropriate to avoid injustice).

■ Based upon the evidence presented at trial, the undersigned concludes, by a preponderance of the evidence, that Fat Boy and/or Lee spent certain monies on betterments after the "purchase" of the vessel and should be adequately reimbursed for such.

Again, Lee and Fat Boy allege that they are entitled to be reimbursed for "betterments" made to the vessel totaling between $65,000.00 and $75,000.00. Those betterments included, among others, new engines, new cockpit air-conditioning, an upgrade of the electronics, a new generator, and other improvements to the cooling system.

Defendants have generally argued that the most appropriate way to value the improvements and betterments in this case is full reimbursement for actual costs, with depreciation for age and usage. The plaintiff generally argues that the Court should focus on how the betterments affected the increase in value of the vessel. The Court concludes that it is appropriate to value the improvements and betterments made to the vessel by determining how much the betterments or improvements increased the value of the vessel, with consideration given to the actual cost of the improvement.

Again, as detailed above, testimony has been elicited indicating that between $65,000.00 and $75,000.00 was expended by either Fat Boy or Lee for the betterment of the vessel while it was in their possession. Lee testified that he was entitled to reimbursement for the following betterments and/or costs:

| | Item | Amount |
| --- | --- | --- |
| 1. | Generator, Canvas | $15,616.59 |
| 2. | Risers, Shafts | $ 4,265.04 |
| 3. | New Electronics | $11,094.99 |
| 4. | Engines | $18,484.47 |
| 5. | New A/C Forward | $ 2,208.00 |
| 6. | Install Cockpit A/C Heat | $ 825.00 |
| 7. | Engine Flushers | $ 583.48 |
| 8. | Vinyl Repair | $ 165.95 |
| 9. | Engine Belt | $ 101.06 |
| 10. | Shafts and Seals | $ 4,625.04 |
| 11. | New Panel | $ 214.00 |
| 12. | Transducer Installation | $ 784.31 |
| 13. | Balance of Electronics | $ 641.90 |
| 14. | Stove Knobs | $ 21.89 |
| 15. | Payment to Clyde Carter | $ 6,885.00 |
| 16. | Payment to Clyde Carter | $ 3,579.73 |
| 17. | Fuel | $ 488.81 |
| 18. | Installation of Engine Flushers | $ 200.00 |
| 19. | Engine Flusher Balance | $ 583.48 |
| 20. | Balance of Repairs | $ 3,000.00 |
| | | $74,368.74 |

Conflicting evidence has been presented by the parties regarding how any betterments should be valued and the effect the betterments had on the overall value to the vessel. The Court notes that such an exercise is not an exact science and the testimony at trial did not provide exact figures regarding this issue. As well, the defendants did not have invoices regarding all work performed by Clyde Carter.

In any event, focusing upon the evidence of record, which the Court must do, and noting the pleadings, argument of counsel and controlling case law, the Court concludes that defendants Fat Boy and Lee have proven by a preponderance of the evidence their entitlement to the total sum of $18,592.18 (exactly 25% of the $74,368.74 claimed by Lee) on their counterclaim for reimbursement of betterments or improvements. Therefore, this Court awards defendant Lee and Fat Boy the sum of $18,592.18 on their counterclaims which shall be assessed as a first and prior lien against the vessel and paid from the proceeds of Northern's sale of the vessel. In reaching this conclusion, the undersigned has also considered any loss of use sustained by the parties in this case.

The undersigned has carefully considered the expert testimony of Jim McClellan ("McClellan"), the current General Manager of Sea Ray of Charleston. Importantly, McClellan testified that 99% of defendant Lee and Fat Boy's alleged betterments did not effect the value of the

boat. In fact, McClellan described the majority of claimed betterments as "normal maintenance." However, McClellan did testify that the new electronics would increase the value of the boat by approximately $2,500.00 (approximately 15–20% of their total cost) and that installation of new cockpit air-conditioning would increase the value of the boat by approximately $100.00–$200.00. With respect to the engines, McClellan testified that the installation of new engines would not result in any sizeable increase in value of a used boat. McClellan further indicated that new engines could actually negatively effect value to the perception of potential buyers that the vessel had experienced problems. However, McClellan also testified that it would cost approximately $18,000.00 to install new engines of the size and type purchased by Lee in a used boat upon purchase. Conversely, Lee testified that the installation of new engines would certainly increase the value of the vessel. This Court concludes by a preponderance of the evidence that the alleged betterments to the vessel did increase the value of the vessel more than that opined by McClellan. However, McClellan's testimony is credible to the extent that it supports the undersigned's legal conclusions herein.

The defendants did not offer expert testimony regarding specifics as to how the betterments would effect the value of a used vessel. However, Lee testified in detail regarding the betterments he made to the vessel and the costs incurred to improve it. The Court is required to consider this testimony. As well, McClellan did testify that certain betterments could increase the value of a vessel by 15–20%. Thus, based upon the evidence of record, the undersigned determines that it is reasonable to conclude that $18,592.18 (25% of $74,368.74) is the total value of the betterments expended by defendants Lee and Fat Boy for which they should be reimbursed.

The testimony of record further proves by a preponderance of the evidence that Fat Boy and/or Lee made such betterments or improvements in "good faith," believing that they were the owners of the vessel and that the improvements were permanent and cost-effective. Good faith has been defined to mean a reasonable and honest belief of the occupant in his or her right or title. *Finucane v. Prichard*, 811 S.W.2d 348 (Ky.Ct.App.1991).

As the record establishes, the vast majority of the betterments or improvements were made after the vessel was purchased and before the discovery that the vessel had been stolen. Credible testimony reflects that the defendants were unaware that the vessel was stolen until early 2004, when Lee attempted to trade-in the vessel. Therefore, this Court concludes that the improvements were made in "good faith." While a forged deed cannot validly transfer property even to bona fide purchasers, those who take from a forged instrument can receive an equitable lien for the value of improvements that were made by the purchaser in "good faith." *M.M. & G. v. Jackson*, 612 A.2d 186 (D.C.1992).

Finally, as noted above, the parties stipulated prior to trial that the validity of Carolina First's preferred ship's mortgage on the vessel was dependent upon whether Fat Boy or Northern held superior title to the vessel. Because this Court now concludes that Fat Boy does not have superior title to the vessel, and in accordance with the parties' filed stipulation, the Court also concludes that Carolina First has no interest in the vessel.

It is therefore, **ORDERED, ADJUDGED, AND DECREED**, that:

1. The plaintiff is awarded title and possession to the vessel;

2. Defendants Fat Boy and Lee shall have judgment entered in their favor, as a result of their counterclaims, in the total amount of $18,592.18. This judgment shall be assessed as a first and prior lien against the vessel and paid from the proceeds of plaintiff Northern's sale of the vessel;

3. Carolina First has no interest in the vessel;

4. Each party shall also be responsible for their own costs and attorney's fees; and

5. All *custodia legis* expenses shall be the sole responsibility of the plaintiff.

The Clerk is directed to enter on the rolls of this Court a judgment in accordance with the terms of this Order.

IT IS SO ORDERED.

## ORDER ON MOTION TO ALTER OR AMEND

This lawsuit originally came before the Court as a petitory and possessory suit to try title to a pleasure vessel. (Doc. # 1). Defendant Fat Boy, LLC purchased a yacht from Daniel Dey ("Dey") that was later found to be stolen. As a result, the original owner's insurance company, the plaintiff Northern Insurance Company of New York, sought to take back the boat and recover its losses. This Court issued its Findings of Fact and Conclusions of Law on February 13, 2006. (Doc. # 70). Title to the vessel was awarded to the plaintiff and the defendant recovered costs for betterments and improvements in the amount of $18,592.08. (Doc. # 70). On February 28, 2006, the plaintiff moved to alter or amend the judgment, requesting that the defendants be required to equally share the *custodia legis* expenses and that the defendants' monetary award be reduced. (Doc. # 74). The defendants responded to the motion on March 18, 2006 (Doc. # 75), and the plaintiff filed a reply to the response on March 28, 2006. (Doc. # 78).

Fed.R.Civ.P. 59(e) allows a party to file a motion to alter or amend a judgment within ten days of its entry. The Rule does not provide for a particular standard as to when a district court may grant a motion to alter or amend its judgment. However, courts have recognized three grounds for granting such a motion: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993). In this case, the plaintiff argues that there is evidence in the record to support its contention that the defendants refused to relinquish the vessel in question when the lawsuit was commenced, forcing the plaintiff to sustain *custodia legis* costs as a result of this action. (Doc. # 74). Moreover, the plaintiff argues that the defendant is not entitled to all of the improvements and betterments awarded by the Court, as the betterments did little to increase the value of the vessel. (Doc. # 74).

In summary, this case primarily raised three major issues: (I) title to the vessel, (ii) betterments, and (iii) costs. Clearly, the title issue is resolved. The plaintiff will now obtain title to the vessel. As to betterments, this Court heard testimony from both sides at trial. The testimony at trial was not as precise as it possibly could have been as to how the betterments issue should have been resolved and how much any betterments increased the value of the vessel. The Court reached a decision based on the testimony presented applying appropriate legal principles.

Additionally, in its motion, the plaintiff argues that Lee received insurance proceeds for the installation of new

engines, and should, therefore, have his award reduced. The Court noted such proceeds, although they did not have any significant impact on the overall award made to the defendants in this case. No persuasive case law has been cited that clearly states such payment by an insurance company would warrant reduction of the defendants' recovery in this action. As well, the plaintiff recovered a substantially lower percentage of the total betterments to the vessel than claimed. The Court will not reduce the defendants' award based solely on the issue of insurance proceeds.

The plaintiff also argued at trial that the defendants' betterments to the vessel were minimal in relation to increased value. The defendants argued that the betterments substantially increased the value of the vessel. The answer, as the Court found, was somewhere in between. The plaintiff's expert stated that the value of the vessel was increased little by the addition of a new engine, generator, air conditioning, electronic system, and various other improvements that the defendant made; however, the expert noted that certain improvements would have increased the value of the vessel. After careful reconsideration, the Court finds that there was sufficient evidence in the record to support the $18,592.18 awarded to the defendants as set forth in the Findings of Fact and Conclusions of Law. The Court will allow the defendants' award for betterments and improvements to remain in place with a reduction for *custodia legis* expenses as set forth below.

■ The Court has reviewed the memoranda filed, relevant case law, the record, and its prior ruling. As to the cost of regaining possession of the vessel, the plaintiff argues the defendants should be required to pay part of the *custodia legis* expenses. The plaintiff asserts that courts have consistently ruled that owners and lienholders of a vessel are liable for their proportionate share of administrative expenses incurred while maintaining a vessel. *See, Donald D. Forsht Associates, Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556 (11th Cir.1987) (holding that third party claimants and lienholders had potential liability for their proportionate share of administrative expenses); and *Beauregard, Inc. v. Sword Services LLC.*, 107 F.3d 351 (5th Cir.1997) (holding that a District Court's requirement that an intervenor in admiralty in rem action share in cost of maintaining the seized vessel was an, "appropriate exercise of discretion."). In this case, both parties claimed an interest in the Sea Ray. However, the case law strongly favored the plaintiff as to the title question. Further review of the record shows that the defendant did not consent to turning the vessel over to the plaintiff nor consent to its arrest. Moreover, the defendant did ultimately discover that the vessel was stolen. Upon careful consideration of the motion to alter or amend judgment, and in light of the relevant case law, the Court now concludes the defendant should be responsible for a portion of the *custodia legis* expenses.

The plaintiff states it has incurred *custodia legis* expenses of $26,512.55. The plaintiff argues the defendants should pay one-half of the total *custodia legis* expenses ($13,256.27), or alternatively, $6,097.88 in such expenses on a pro rata share, based on each party's recovery. As noted, the plaintiff made all decisions regarding arrest and storage costs and expenses. Using its equitable discretion and considering the evidence in the record, the Court concludes that the defendants should be responsible for *custodia legis* expenses of fifty percent (50%) of their pro rata share of recovery. As noted, twenty-three percent (23%) of the total *custodia legis* expenses that the plaintiff sustained would total $6,097.88. Because the plaintiff controlled costs and expenses, and in light of the defendants being awarded only

twenty-five percent of the total betterments, the Court will divide this amount by fifty percent. The defendants are required to pay *custodia legis* expenses in the amount of $3,048.94.

The defendants originally recovered $18,592.18 for betterments. Reducing that amount by $3,048.94 leaves a total recovery, by the defendants, of $15,543.24. All other requests to amend the Court's original judgment by the plaintiff, after careful consideration, are denied. The arguments set forth by the defendants in their memorandum in opposition to the motion to alter or amend judgment were carefully considered by the Court.

It is, therefore, **ORDERED, ADJUDGED, AND DECREED**, that the plaintiff's motion to alter or amend the judgment is granted in part and denied in part. The plaintiff's motion to reduce the award for claimed betterments is denied. However, the defendants are responsible for $3,048.94 of the *custodia legis* costs for the reasons set forth herein, with a total recovery by the defendants of $15,543.24.

**AND IT IS SO ORDERED.**