**QBE INSURANCE (INTERNATIONAL) LTD., a foreign corporation, Plaintiff,**

v.

**EVA AIRWAYS CORPORATION, a foreign corporation; and Does 1 through 10, inclusive, Defendants.**

**No. CV 13–0279 RS.**

United States District Court, N.D. California, San Francisco Division.

April 19, 2013.

---

Adam Curtis Brown, Andrea R. Shearer, Hill Rivkins Brown & Associates, Fair Oaks, CA, for Plaintiff.

Kevin Richard Sutherland, Natalie R. Quan, Clyde & Co. U.S. LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS

RICHARD SEEBORG, District Judge.

### I. INTRODUCTION

Plaintiff QBE Insurance (International) Ltd. (QBE) purports to advance claims for breach of contract and negligence arising from alleged damage to cargo being transported via air from San Francisco, California to Shanghai, China. The parties agree that the Montreal Convention, a treaty governing the international air carriage of cargo, constitutes the exclusive law applicable to this case. Defendant EVA Airways Corporation (EVA) has moved to dismiss on the basis that QBE lacks standing, as it is not listed as the consignor or consignee on the air waybill, as required by Article 14 of the convention. QBE argues that it has standing as the subrogated underwriter of consignor Nippon Express U.S.A., Inc. For the reasons discussed below, the motion to dismiss is granted.

### II. BACKGROUND

QBE insures Flexstar Technology, Inc. (Flexstar), who contracted with freight forwarding company Nippon Express to transport a set of its electronics products from San Francisco, California to Shanghai, China. Nippon assigned the consignment to EVA, the carrier who fulfilled the shipment. Master Air Waybill No. 695–6696–2615 documents the shipment and lists Nippon Express U.S.A., Inc. (Nippon USA) as the shipper/consignor and Nippon Express (China) Co., Ltd. (Nippon China) as the Consignee.

The cargo was in good working order when it arrived at the San Francisco International Airport under Nippon USA's care, custody, and control on January 22, 2011. Nippon USA then signed off on the cargo's condition and had it loaded for flight on an EVA plane. EVA flew the cargo to Taipei, Taiwan, where it was discharged from the aircraft and stored by the airline pending a connecting flight to Shanghai. The cargo arrived at Shanghai Pudong International Airport on January 28, 2011, where it was again unloaded and awaited delivery to the consignee. On February 9, 2011 (which, due to a local holiday, was the first working day after the cargo's arrival), Nippon China took delivery. Upon inspection by the consignee, it was discovered that the cargo's "shock watch" and "tip & tell" indicators had been activated. The cargo was then delivered to the consignee by road, arriving at its premises on February 11, 2011. At that point, the cargo was unpacked and determined to have been severely damaged, and all parties were notified of the damage. QBE, as Flexstar's insurer, claims that it suffered damages for the repair and replacement of the damaged cargo in the amount of $95,554.46.

QBE further avers that it "was the subrogated underwriter of the receiver, insurer and/or owner of the shipment and brings this action on its own behalf and as agent and trustee of all parties who may be or become interested in said shipment as their respective interests may appear." Compl. ¶ 21. In opposition to the motion to dismiss, QBE describes itself not only as the subrogated underwriter of Flexstar (the owner of the shipment), but also as holding a subrogation receipt dated January 21, 2012, whereby Nippon, the consignor and consignee, assigns its rights regarding the cargo and airway bill to QBE. See Opp. to MTD at 3.

## III. LEGAL STANDARD

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the asserted claims. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements" are not taken as true). In dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir.1995).

## IV. DISCUSSION

 The Montreal Convention, to which the United States and China are both signatories, applies to all "international carriage of persons, baggage or cargo performed by aircraft for reward." Convention for the Unification of Certain Rules for International Carriage, May 28, 1999 ("Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734, Art. 1(1). It "is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n. 4 (2d Cir.2004). "Because many of the provisions of the Montreal Convention are taken directly from the Warsaw Convention and the many amendments thereto, the case law regarding a particular provision of the Warsaw treaty applies with equal force regarding its counterpart in the Montreal treaty." *Best v. BWIA West Indies Airways, Ltd.*, 581 F.Supp.2d 359, 362 n. 1 (E.D.N.Y.2008).

 The Montreal Convention defines "international carriage" as "any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated ... within the territories of two States Parties." Montreal Convention, Art. 1(2). As the subject consignment was transported from San Francisco, United States, to Shanghai, China, both the "place of departure" and "place of destination" were within States Parties. Accordingly, QBE and EVA agree that the Montreal Convention governs this case. "By its own terms, the treaty, where applicable, preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case." *Best*, 581 F.Supp.2d at 362 (citing *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999)).

Article 14 of the Montreal Convention states, "the consignor and the consignee can respectively enforce all the rights given to them ..., each in its own name, whether it is acting in its own interest or in the interest of another...." EVA argues that QBE lacks standing under Article 14 to bring this case because Nippon, not QBE, is listed on the air waybill as the consignor and consignee of the shipment. EVA contends that· the Montreal Conven-

tion's limited grant of standing to the consignor and consignee should be interpreted strictly, as its counterpart in the Warsaw Convention, Article 30(3), has been.

In *Johnson v. American Airlines, Inc.*, for example, the Ninth Circuit held that "only the consignor and consignee to the air waybill have standing to sue under the Convention." 834 F.2d 721, 724–25 (1987) (interpreting the Warsaw Convention). Accordingly, it upheld the district court's grant of summary judgment to the airline on the basis that the individual plaintiff lacked standing to sue when her deceased mother's remains were damaged during international transport, when the air waybill had listed the funeral homes in California and Ireland, respectively, as the consignor and consignee. The language of the Warsaw Convention that applied in *Johnson* was that providing the "consignor will have a right of action against the first carrier, and the . . . consignee who is entitled to delivery will have a right of action against the last carrier." Warsaw Convention, Art. 30(3). *Johnson* explicitly reserved the question presented by this case, however, "of whether the plaintiff in an action based on alleged contractual rights derived from the consignor or consignee . . . would have standing." 834 F.2d at 725.

In *American Banana Company, Inc. v. Venezolana Internactional de Aviacion, S.A.*, the New York Court of Appeals interpreted the Warsaw Convention's standing requirement in a similarly literal manner. 49 N.Y.2d 848, 427 N.Y.S.2d 789, 404 N.E.2d 1330 (1980). There, rather than being faced with a plaintiff who clearly had an interest in the damaged cargo, but was not listed as the consignor or consign-

ee on the air waybill (as in *Johnson* ), the court was presented with the question of whether a plaintiff who was listed as the consignee on an air waybill due to an administrative oversight, but did not have any interest in the damaged goods, nevertheless had standing to sue. The plaintiff, American Banana, had been listed as the consignee of a shipment of plantains on the air waybill. 49 N.Y.2d at 789, 426 N.Y.S.2d 729. After it was delayed, American Banana decided it did not want the shipment, and advised the consignor that the plantains should instead be shipped to West Indies Food and Importing, Inc., and that the consignee should be changed from American Banana to West Indies accordingly. *Id.* The airline failed to change the consignee. *Id.* American Banana later sued for damage to the goods and the trial court granted defendants summary judgment on the basis that it lacked standing to bring the suit because it had redirected the shipment to West Indies. On appeal, the grant of summary judgment was reversed. The Court of Appeals held that "where plaintiff was named in the air waybill and that waybill was never changed, the plaintiff must be considered a 'consignee' entitled to maintain the suit under the terms of the Convention, even though it does so in the interest of West Indies." *Id.* at 850, 426 N.Y.S.2d 729.

█ Taken together, *Johnson* and *American Banana* indicate that the standing provision of the Montreal Convention is to be construed strictly. Plaintiff argues that it nonetheless has standing to sue because it has subrogation rights to Nippon's claims pursuant to a subrogation receipt.[1] The averment in the complaint

---

1. QBE has attached four exhibits to its opposition to the motion to dismiss, including Exhibit 4, which it purports to be a subrogation receipt from Nippon USA. In violation of Civil Local Rule 7–3(c), which requires that "[a]ny evidentiary and procedural objections to the

opposition must be contained within the reply brief or memorandum," EVA separately filed objections to Exhibits 2 and 3. Rather than object to exhibit 4, EVA argues in reply that it is not a subrogation receipt, but an assign-

supporting this claim is that QBE "was the subrogated underwriter of the receiver ... of the shipment and brings this action on its own behalf and as agent and trustee of all parties who may be or become interested in said shipment as their respective interests may appear." Compl. ¶ 21. Even if accepted as true, this allegation would not support QBE's standing to sue under the Montreal Convention. QBE has not cited any cases interpreting either the Montreal Convention or its predecessor the Warsaw convention which have held that a party who does not appear on the air waybill as consignor or consignee has standing to sue on behalf of the consignor or consignee by virtue of being the proper party's subrogated underwriter. QBE relies on only three cases, all of which arise in admiralty, involve the transport of cargo by ship, and long predate the ratification of the Warsaw Convention. *See Standard Marine Ins. Co. v. Scottish Metro. Assur-ance Co.*, 283 U.S. 284, 51 S.Ct. 371, 75 L.Ed. 1037 (1931), *Wager v. Providence Ins. Co.*, 150 U.S. 99, 14 S.Ct. 55, 37 L.Ed. 1013 (1893), and *Phoenix Ins. Co. v. Erie & W. Transp. Co.*, 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873 (1886). They are not persuasive.

■ Additionally, the plain language of Article 14 of the Montreal Convention indicates that the sovereign state signatories to it contemplated that the consignor and consignee would only be granted the right to sue "each in its own name" rather than through a third party to whom their rights had been subrogated or assigned. Therefore, even if the complaint is construed as averring that QBE is consignor Nippon USA's subrogated underwriter, an allegation taken as true on a motion to dismiss, QBE would lack standing to bring this claim.[2] QBE's allegations that it has suffered damages in repairing the cargo on

---

ment of rights acknowledging that QBE is the subrogated underwriter of the cargo owned by its insured, Flexstar. No matter. On a motion to dismiss the court may only consider the facts alleged in the complaint, documents attached to the complaint, and other matters amenable to judicial notice. *See Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir.2009). QBE has not filed a request for judicial notice of these documents, nor explained in their motion why they are the proper subject of judicial notice under Federal Rule of Evidence 201. The consequence of considering these "matters outside the pleadings" would be converting this motion to one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. Proc. 12(d). As EVA has not had a "reasonable opportunity to present all the material that is pertinent to" a motion for summary judgment, transforming the instant motion into one for summary judgment would be improper. *Id.* Therefore, all of the exhibits attached to QBE's opposition to the motion to dismiss are excluded.

**2.** At the hearing, both parties conceded that, although either Nippon entity has standing to bring this claim, a new complaint in the name of either the consignor or consignee would now be barred by the Montreal Convention's two year statute of limitations, unless the new complaint could be deemed to relate back to the original complaint under Federal Rule of Evidence 15. *See* Montreal Convention, Art. 35. Multiple federal courts have held that the relation back doctrine applies to cases brought under the Warsaw and, by extension, Montreal Convention. *See, e.g., Pennington v. British Airways*, 275 F.Supp.2d 601 (E.D.Pa. 2003), *In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, No. 11–md–02246, 2012 WL 3962906 (S.D.Fla. Sept. 11, 2012), *Raddatz v. Bax Global, Inc.*, No. 07–cv–1020, 2008 WL 2435582 (E.D.Wis. June 16, 2008). Where a federal court lacks subject matter jurisdiction over a case at its outset, however, the jurisdictional defect cannot be cured by substituting the plaintiff because the absence of jurisdiction deprives the court of the power to make such a substitution. *See Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774 (5th Cir.1986). Therefore, leave to amend the complaint to substitute either Nippon USA or China as plaintiff would be futile, notwithstanding whether the new complaint would relate back to the present one under Rule 15.

behalf of its insured, Flexstar, and that it "brings this action on its own behalf" further belie its characterization of this case as one brought on behalf of consignor Nippon.

## V. CONCLUSION

The motion to dismiss is granted.

IT IS SO ORDERED.